**Holly FRANKS, as next friend of H.B.L., a minor; and H.B.L. Plaintiffs–Appellees,**

v.

**The KENTUCKY SCHOOL FOR THE DEAF; State Board for Elementary and Secondary Education, Kentucky; and Paul Smiley, David Anderson, and Donna Anderson, in their official capacities, Defendants–Appellants,**

**United States of America, Intervenor.**

**No. 97–5075.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1997.

Decided April 24, 1998.

Lanna M. Kilgore (argued and briefed), Bowling Green, KY, for Holly Franks, and HBL.

William B. Pettus, Asst. Atty. Gen. (argued and briefed), Office Of Atty. Gen., Civil &

Environmental Law Div., Frankfort, KY, for The Kentucky School for the Deaf, State Bd. for Elementary and Secondary Educ., KY, Paul Smiley, David Anderson, Donna Anderson, and Michael Brame.

Seth M. Galanter (argued and briefed), U.S. Dept. Of Justice, Civil Rights Div., Appellate Section, Washington, DC, for United States of America.

Before: WELLFORD, NORRIS, and SILER, Circuit Judges.

## OPINION

ALAN E. NORRIS, Circuit Judge.

Defendants, Kentucky state agencies and officials, asserted, in a motion for judgment on the pleadings or alternatively a motion for summary judgment, Eleventh Amendment immunity from plaintiffs' claim brought under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688. The district court ruled that Congress properly abrogated defendants' immunity. Defendants bring this interlocutory appeal challenging that ruling, and the United States intervenes to defend the federal statutes at issue.

## FACTS

The plaintiffs in this cause of action are Holly Franks and her daughter, HBL, a hearing-impaired minor female who attended the Kentucky School for the Deaf ("KSD"). In their complaint, plaintiffs alleged that on several occasions a male student at KSD harassed and threatened HBL, that HBL reported these incidents to the appropriate KSD officials, and that despite HBL's report the same boy nevertheless was able to later rape her at knife point during a school trip. Thereafter, HBL transferred to a school for the deaf located in another state.

Plaintiffs filed suit against KSD, the State Board for Elementary and Secondary Education of Kentucky (the "Board"), and three state employees in their official capacities, for violating Title IX.[1] They alleged that

---

1. Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

defendants "knowingly failed to take action to remedy a hostile environment caused by the male student's sexual harassment of HBL, thereby denying HBL the benefits of and subjecting her to discrimination under the educational program of the school."

## ANALYSIS

■ Although the district court's denial of defendants' motion for Eleventh Amendment immunity is an interlocutory decision, this court has jurisdiction pursuant to 28 U.S.C. § 1291 based upon the collateral order doctrine. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993). We review de novo the district court's denial of defendants' motion for immunity. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 836 (6th Cir.1997).

At the time Congress enacted Title IX, it did not include within the statute mention of whether it applied to state governments. Subsequently, Congress effectually amended Title IX by providing in § 1003 of the Rehabilitation Act Amendments of 1986, 100 Stat. 1845, 42 U.S.C. § 2000d–7, that:

(1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title IX of the Education Amendments of 1972[, 20 U.S.C. §§ 1681–1688], . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

(2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d–7(a). Plaintiffs, of course, contend that this amended form of Title IX extends liability to state governments, the Eleventh Amendment notwithstanding.

■ The Eleventh Amendment bars persons from suing a state in federal court. *See Seminole Tribe v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996). There are, however, exceptions to this sovereign immunity provision. For example, under some circumstances Congress may abrogate the states' Eleventh Amendment sovereign immunity. *See id.* at 55, 116 S.Ct. at 1123. Likewise, a state may waive its immunity. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). Plaintiffs and the United States argue that defendants may be sued under Title IX in federal court because (1) Congress abrogated the states' Eleventh Amendment immunity, and (2) defendants waived their immunity by accepting federal funds.

In *Seminole Tribe,* the Supreme Court articulated a two-part test for determining whether Congress successfully abrogated the states' sovereign immunity with regard to a particular statute. The Court held that states retain their sovereign immunity unless (1) Congress unequivocally expressed its intent to abrogate the immunity, and (2) Congress acted pursuant to a valid exercise of power. *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1123; *see also Timmer,* 104 F.3d at 837.

To satisfy the first *Seminole Tribe* requirement, Congress must have made its intention to abrogate immunity "unmistakably clear in the language of the statute." *Seminole Tribe,* 517 U.S. at 56, 116 S.Ct. at 1123 (quotation omitted). In view of the explicit language of § 2000d–7(a)(1) quoted above, Congress clearly satisfied the first requirement. *See Lane v. Pena,* 518 U.S. 187, 198, 116 S.Ct. 2092, 2099, 135 L.Ed.2d 486 (1996) ("By enacting [§ 2000d–7,] Congress sought to provide the sort of unequivocal [abrogation] that our precedents demand.").

To satisfy the second requirement, Congress must have acted "pursuant to a constitutional provision granting Congress the power to abrogate." *Seminole Tribe,* 517 U.S. at 59, 116 S.Ct. at 1125 (citation omit-

under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

ted). Because Section 5 of the Fourteenth Amendment ("Section 5")[2] is the only constitutional provision that the Supreme Court recognizes as granting Congress the power to abrogate the states' immunity,[3] we must determine whether Congress, in purporting to abrogate the sovereign immunity of the states for purposes of Title IX, acted pursuant to Section 5.

Congress did not expressly invoke the authority of Section 5 it when enacted § 2000d–7. This omission is not fatal, however. *Timmer v. Michigan Dep't of Commerce*, 104 F.3d 833, 839 (6th Cir.1997); *Crawford v. Davis*, 109 F.3d 1281, 1283 (8th Cir.1997) (citing, *inter alia, EEOC v. Wyoming*, 460 U.S. 226, 243–44 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983)). The question is whether Congress actually had the authority to adopt the legislation pursuant to that provision, not whether Congress correctly guessed the source of its authority. Hence, we must "make an objective inquiry, namely, whether Congress could have enacted the legislation at issue pursuant to a constitutional provision granting it the power to abrogate. As long as Congress had such authority as an objective matter, whether it also had the specific intent to legislate pursuant to that authority is irrelevant." *Crawford*, 109 F.3d at 1283; *accord Wilson–Jones v. Caviness*, 99 F.3d 203, 208 (6th Cir.1996); *Doe v. University of Illinois*, 138 F.3d 653, 659–60 (7th Cir.1998).

Section 5 of the Fourteenth Amendment grants Congress the authority to enforce the Amendment's substantive provisions which proscribe, *inter alia*, gender discrimination in education. *United States v. Virginia*, 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). Since Title IX also proscribes gender discrimination in education, it follows that Congress had the authority, pursuant to Section 5, to make Title IX applicable to the states. *Doe*, 138 F.3d at 659–60; *Crawford*, 109 F.3d at 1283.

Therefore, since Congress made its intention to abrogate the states' Title IX immunity unmistakably clear, and it had the authority to do so pursuant to Section 5 of the Fourteenth Amendment, we hold that Congress successfully abrogated the states' Eleventh Amendment immunity from Title IX lawsuits. *Doe*, 138 F.3d at 659–60; *see also Crawford*, 109 F.3d at 1282–83.

## CONCLUSION

Accordingly, we **affirm** the order of the district court denying defendants immunity and remand this cause for further proceedings.

---

**2.** Section 5 of the Fourteenth Amendment provides that, "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5. The provisions of "this article" include the declaration that, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Id.* § 1.

**3.** "Because [the Fourteenth Amendment] was adopted subsequent to the Eleventh Amendment, and its substantive provisions expressly regulate state action, the Fourteenth Amendment supersedes or limits the Eleventh Amendment to the extent they are inconsistent." 17 MOORE'S FEDERAL PRACTICE § 123.22[1][a] (3d ed.1997) (footnote omitted); *see also Seminole Tribe*, 517 U.S. at 59, 116 S.Ct. at 1125.