# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1010

_____

| | | |
|---|---|---|
| Thomas Bradley, as Natural Guardian of, and on behalf of David Bradley, a minor; Dianna Bradley, as Natural Guardian of, and on behalf of David Bradley, a minor; | * * * * * * | |
| Plaintiffs - Appellees, | * * | |
| United States of America, | * * | |
| Intervenor on Appeal, | * | Appeals from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Arkansas Department of Education; Mike Crowley, individually and in his capacity as an employee of the Arkansas Department of Education; | * * * * * | |
| Defendants - Appellants, | * * | |
| Williford School District 39; John Does, 1-10, | * * * | |
| Defendants, | * | |
| ----------------------------- | * * | |
| Advocacy Services, Inc., | * * | |
| Amicus Curiae. | * | |

_____

No. 98-1830

_____

Jim C, individually and as parent and    *
next friend of J.C.; Susan C,    *
individually and as parent and next    *
friend of J.C.;    *
   *
        Plaintiffs - Appellees,    *
   *
United States of America,    *
   *
        Intervenor on Appeal,    *
   *
    v.    *
   *
Atkins School District; Arch Ford    *
Education Service Cooperative;    *
   *
        Defendants,    *
   *
Arkansas Department of Education,    *
   *
        Defendant - Appellant.    *

_____

Submitted:  September 24, 1998
Filed: August 31, 1999

_____

Before BOWMAN, Chief Judge,[1] LOKEN, and KELLY,[2] Circuit Judges.
_____

BOWMAN, Chief Judge.

In these two cases, consolidated on appeal, Arkansas residents brought suit against the Arkansas Department of Education (ADE) and other defendants, alleging violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.A. §§ 1400-1487 (West Supp. 1999); § 504 of the Rehabilitation Act (RA), 29 U.S.C. § 794 (1994); and other provisions of state and federal law.  The State of Arkansas, representing the ADE and Mike Crowley, a Bradley defendant and ADE employee, moved the District Court in each case to dismiss the actions, claiming the Eleventh Amendment prevented a federal court from exercising jurisdiction over such claims. The District Court denied Arkansas's motions with respect to the IDEA and, in Jim C., § 504 of the RA.  The state then filed these interlocutory appeals.

I.

These interlocutory appeals involve exclusively legal issues, so we provide only a brief summary of the facts of each case.  In Bradley, Thomas and Dianna Bradley filed suit against the ADE, ADE employee Mike Crowley, the local school district, and other unidentified individual defendants, alleging  violations of the IDEA and other state and federal statutes.  The Bradleys' IDEA claim asserts that the ADE, Crowley,

---

[1]The Honorable Pasco M. Bowman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999. He has been succeeded by the Honorable Roger L. Wollman.

[2]The Honorable John D. Kelly died on October 21, 1998.  The case has been decided by the remaining members of the panel pursuant to 28 U.S.C. § 46(d) (1994) and 8th Cir. R. 47E.

and the local school district failed to provide an adequate due process hearing under the IDEA to review their son David's Individual Education Program (IEP).[3]

Representing the ADE and Crowley, Arkansas moved for dismissal or in the alternative for summary judgment on a number of grounds. One argument Arkansas raised is that the Eleventh Amendment bars a federal court from exercising jurisdiction over the Bradleys' IDEA claim.

The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas, denied the state's motion. Judge Moody concluded that the IDEA was a valid exercise of Congress's power under § 5 of the Fourteenth Amendment to enforce the Equal Protection Clause, and that the IDEA's provisions abrogating the state's Eleventh Amendment immunity therefore were valid under Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). See Bradley v. Arkansas Dep't of Educ., No. LR-C-96-1004, slip op. at 4 (E.D. Ark. Nov. 21, 1997) (order denying motion to dismiss or for summary judgment). Arkansas appealed the denial of its motion to dismiss the Bradleys' IDEA claim on Eleventh Amendment grounds, and Judge Moody stayed proceedings pending this appeal.

In Jim C., Jim and Susan C. filed suit against the ADE, Arch Ford Education Services Cooperative, and the local school district, alleging violations of the IDEA, § 504 of the RA, 42 U.S.C. § 1983 (1994), and state law. In particular, Jim and Susan C. claimed that their child, J.C., should receive additional treatment consistent with the Lovaas program, a methodology found to have some success in treating children with autism. See Jim C. v. Atkins Sch. Dist., No. LR-C-96-748, slip op. at 2 (E.D. Ark.

---

[3]An IEP is a written statement that indicates the educational performance level of a child with a disability and the special and mainstream services that will be used to accommodate the child and ensure that the child receives an appropriate education. See 20 U.S.C.A. §§ 1401(11), 1414(d) (West Supp. 1999).

Feb. 23, 1998) (memorandum opinion and order).  Representing the ADE, Arkansas moved for dismissal or in the alternative for summary judgment, asserting in part that the Eleventh Amendment prevented a federal court from exercising jurisdiction over Jim and Susan C.'s IDEA, § 504, and § 1983 claims.

The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas, denied Arkansas's motion to dismiss Jim and Susan C.'s IDEA and § 504 claims.  Judge Eisele agreed with Judge Moody's order in Bradley that the abrogation provision in the IDEA was a valid exercise of Congress's § 5 power.  See id. at 5-6 (quoting Bradley, LR-C-96-1004, slip op. at 4).  Judge Eisele also determined § 504 was a valid exercise of Congress's § 5 power.  See id. at 7.[4]  Therefore, the District Court concluded it had jurisdiction over the IDEA and § 504 claims.  Arkansas appealed, and the District Court held in abeyance its ruling on further motions and granted a continuance while the appeal was pending.  See id.  Arkansas then requested that Jim C. be consolidated with Bradley.

## II.

The text of the Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Amendment's text, however, does not accurately define the bounds of the immunity that the Amendment reflects.  See Alden v. Maine, 119 S. Ct. 2240, 2246 (1999) (stating that "Eleventh Amendment immunity," while a convenient shorthand, is "something of a misnomer,

_____

[4]Judge Eisele concluded that the Eleventh Amendment prevents the District Court from exercising jurisdiction over the § 1983 claim Jim and Susan C. brought against the ADE, and therefore dismissed that claim.  See Jim C., LR-C-96-748, slip op. at 7.  This ruling has not been appealed.

for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment").  Rather, Eleventh Amendment immunity generally prevents an unwilling state from being sued in federal court.  See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 119 S. Ct. 2199, 2204 (1999) [hereinafter Florida Prepaid]; Seminole Tribe, 517 U.S. at 54; see also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997) (saying the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction").  The Amendment's protections also may reach to state officials and state agencies, see Hadley v. North Ark. Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 123 n.34 (1984)), cert. denied 519 U.S. 1148 (1997), and to suits brought against a state by citizens of that same state, see Hans v. Louisiana, 134 U.S. 1, 15 (1890); see also Coeur d'Alene, 521 U.S. at 268 (reaffirming Hans).  Therefore, the Eleventh Amendment may prevent the plaintiffs in these consolidated cases, all citizens of Arkansas, from proceeding in federal court against the ADE, an Arkansas state agency, and defendant Crowley, an ADE official, for alleged violations of the IDEA and § 504.

Although agreeing that Eleventh Amendment analysis is appropriate, the plaintiffs and intervenor the United States argue that three exceptions to Arkansas's Eleventh Amendment immunity allow the plaintiffs to proceed with their claims in federal court.  First, the plaintiffs assert that Congress, exercising the power granted it by § 5 of the Fourteenth Amendment, abrogated the states' immunity and forced unwilling states to defend themselves in federal court against claims brought for violating the IDEA and § 504.  Second, they argue that Arkansas waived its Eleventh Amendment immunity because it received federal funds appropriated with the conditions imposed by the IDEA and § 504, and that one of the conditions imposed was that a state consent to defend itself in federal court against claims arising under those statutes.  Finally, the Bradleys contend that, even if Arkansas is shielded by its

Eleventh Amendment immunity, defendant Crowley nevertheless may be enjoined from engaging in future conduct that is contrary to federal law.

## III.

Turning first to the plaintiffs' arguments that federal courts have jurisdiction over IDEA claims brought against the ADE and, in <u>Bradley</u>, defendant Crowley, we note that this Court recently has considered whether a state may be sued in federal court for alleged violations of the IDEA. In that decision, <u>Little Rock School District v. Mauney</u>, No. 98-1721, 1999 WL 407763 (8th Cir. Jun. 14, 1999), we allowed private citizens' claims that the ADE had violated the IDEA to proceed in federal court on two independent grounds, either of which was a sufficient basis for rejecting the ADE's claim of Eleventh Amendment immunity: (1) that the IDEA abrogated the states' immunity and that the abrogation was effective because Congress exercised its power under § 5 of the Fourteenth Amendment when enacting the IDEA; and (2) that Congress created a valid spending program when it enacted the IDEA, and that Arkansas waived its immunity when it participated in IDEA programs, accepting funds appropriated pursuant to the IDEA and governed by the conditions imposed by the IDEA. <u>See id.</u> at *11-*12.

After our opinion in <u>Mauney</u> was filed, however, the Supreme Court announced a trilogy of Eleventh Amendment cases, <u>Alden</u>, <u>Florida Prepaid</u>, and <u>College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board</u>, 119 S. Ct. 2219 (1999) [hereinafter <u>College Savings</u>]. This Court then announced its en banc decision in <u>Alsbrook v. City of Maumelle</u>, No. 97-1825, 1999 WL 521709 (8th Cir. Jul. 23, 1999) (en banc). Looking at these more recent authorities, we conclude that <u>Florida Prepaid</u> and <u>Alsbrook</u> undercut <u>Mauney</u>'s abrogation analysis. Therefore, we reexamine the question whether a private citizen's suit for a violation of the IDEA may be brought against an unwilling state in federal court.

## A.

To determine whether the IDEA abrogates the states' immunity, we begin, as Mauney and the subsequent decisions of this Court and the Supreme Court do, with the two-part Seminole Tribe test. See, e.g., Florida Prepaid, 119 S. Ct. at 2205; Alsbrook, 1999 WL 521709, at *4; Mauney, 1999 WL 407763, at *3. The first part of the Seminole Tribe test requires that a federal statute contain an "unequivocal expression" of Congress's intent to abrogate the states' immunity. See Seminole Tribe, 517 U.S. at 55. The IDEA contains an abrogation provision, 20 U.S.C. § 1403, which reads in part: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." 20 U.S.C.A. § 1403(a) (West Supp. 1999). In Mauney, a panel of this Court stated that the IDEA abrogation provision satisfies the first part of the Seminole Tribe test. See Mauney, 1999 WL 407763, at *4. The subsequent decisions of this Court and the Supreme Court do not undermine this part of Mauney: both Florida Prepaid and Alsbrook conclude that abrogation provisions that essentially mirror § 1403 satisfy the first part of the Seminole Tribe test. See Florida Prepaid, 119 S. Ct. at 2205 (stating the abrogation provision in the Patent and Plant Variety Protection Act, 35 U.S.C. § 296(a), satisfies the first part of the Seminole Tribe test); Alsbrook, 1999 WL 521709, at *4 (concluding the abrogation provision in the Americans with Disabilities Act, 42 U.S.C. § 12202 (1994), unequivocally expresses Congress's intent to abrogate the states' immunity). After examining these authorities, we believe Mauney's determination that § 1403 offers an unequivocal expression of Congress's intent to abrogate the states' immunity remains correct.

The second part of the Seminole Tribe test requires that a statute be an appropriate exercise of Congress's constitutional powers for its abrogation provision to have effect. See Seminole Tribe, 517 U.S. at 55. The Supreme Court and this Court

have recognized only one constitutional power under which Congress may abrogate the states' Eleventh Amendment immunity, the power granted Congress by § 5 of the Fourteenth Amendment.  See Florida Prepaid, 119 S. Ct. at 2205-06; Alsbrook, 1999 WL 521709, at *4.  Section 5 empowers Congress to "enforce, by appropriate legislation, the provisions" of the Fourteenth Amendment, including the Equal Protection Clause.  See U.S. Const. amend. XIV, § 5; see also U.S. Const. amend. XIV, § 1 (containing the Equal Protection Clause, which commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws").

Legislation is an appropriate exercise of Congress's § 5 power only when it is preventative or remedial.  See City of Boerne v. Flores, 521 U.S. 507, 530 (1997).  For legislation to be preventative or remedial, Congress must "identify the conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct."  Florida Prepaid, 119 S. Ct. at 2207.

Because the briefs in this case were submitted prior to the Court's decision in Florida Prepaid, the parties did not pinpoint the constitutional transgressions Congress sought to remedy when it enacted the IDEA. "[G]uided by the principle that the propriety of any § 5 legislation 'must be judged with reference to the historical experience . . . it reflects,'" id. (quoting Boerne, 521 U.S. at 525), we have reviewed the legislative history and believe that Congress did not adequately identify the constitutional transgressions it sought to remedy when it enacted the IDEA.  Congress did identify significant disparities in the treatment of students with disabilities and those without disabilities, and made six relevant findings regarding these differences:

(1) there are more than eight million children with disabilities in the United States today;
(2) the special educational needs of such children are not being fully met;

(3) more than half of the children with disabilities in the United States do not receive appropriate educational services which would enable them to have full equality of opportunity;

(4) one million of the children with disabilities in the United States are excluded entirely from the public school system and will not go through the educational process with their peers;

(5) there are many children with disabilities throughout the United States participating in regular school programs whose disabilities prevent them from having a successful educational experience because their disabilities are undetected; [and]

(6) because of the lack of adequate services within the public school system, families are often forced to find services outside the public school system, often at great distance from their residence and at their own expense.

20 U.S.C. § 1400(b)(1)-(6) (1994); see also Board of Educ. v. Rowley, 458 U.S. 176, 189 (1982) (discussing these congressional findings); Mauney, 1999 WL 407763, at *6 (same).

In making these six findings, however, Congress did not find that the disparate treatment of students with disabilities resulted from action by the states or, if it did, that such state action violated the Equal Protection Clause. Florida Prepaid requires that Congress find that the states themselves are transgressing the constitution. See Florida Prepaid, 119 S. Ct. at 2207 (stating that, when Congress enacted the patent infringement legislation at issue in that case, "Congress identified no pattern of patent infringement by the States, let alone a pattern of constitutional violations"). Congress did not purport to find that the disparate treatment of students with disabilities resulted from state action in violation of the Constitution, which requires states only to have a rational basis to justify treating students with disabilities differently from those without disabilities. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 445-46 (1985). Moreover, Congress did not indicate whether the states were treating students differently, or whether local school districts were responsible for the lack of education for disabled children that Congress sought to remedy when it enacted the IDEA.

Whether Congress correctly identified the constitutional transgressions it sought to remedy, however, is not decisive in this case. Even if we assume Congress adequately identified perceived constitutional transgressions it sought to remedy when it enacted the IDEA, Alsbrook requires us to conclude that the IDEA's abrogation provision is invalid because the IDEA is not an appropriate exercise of Congress's § 5 power. The same difficulty that this Court found with the ADA in Alsbrook applies to the IDEA in the present case. Like the ADA, the IDEA "does far more than enforce the rational relationship standard recognized by the Supreme Court in Cleburne." Alsbrook, 1999 WL 521709, at *6 (discussing the ADA). In many instances, programs rationally related to a legitimate state interest--and thus constitutional under Cleburne-- would be struck down as failing to satisfy the IDEA's requirement that students with disabilities receive a "free appropriate public education." 20 U.S.C. § 1400(c) (1994); cf. Alsbrook, 1999 WL 521709, at *6 (stating that, for the same reason, the ADA exceeds Congress's § 5 power). The Constitution would not, for example, require a local school district to provide the nursing care that the Supreme Court in Cedar Rapids Community School District v. Garrett F. ex rel. Charlene F., 119 S. Ct. 992 (1999), determined the IDEA requires.

Although this Court in Mauney determined that the IDEA had the requisite congruence and proportionality to Congress's goal of providing equal educational opportunity for students with disabilities, see Mauney, 1999 WL 407763, at *11, we now must conclude that the IDEA extends beyond the power granted Congress by § 5 of the Fourteenth Amendment. The IDEA, therefore, cannot be an appropriate exercise of Congress's § 5 power, and its abrogation provision is not valid. See Alsbrook, 1999 WL 521709, at *5 (stating that, if legislation seeks to "expand, enhance, or add to the guarantees of the Fourteenth Amendment," that legislation's abrogation provision is invalid). The abrogation portion of Mauney has been undercut by subsequent events that have changed the legal landscape, and we believe that this portion of Mauney no longer represents current law.

B.

   In addition to its abrogation holding, <u>Mauney</u> holds that Arkansas waived its Eleventh Amendment immunity by receiving funds appropriated under the IDEA. <u>See</u> <u>Mauney</u>, 1999 WL 407763, at *11. The Supreme Court's recent decisions add to the Court's waiver jurisprudence, <u>see</u>, <u>e.g.</u>, <u>College Savings</u>, 119 S. Ct. at 2228 (rejecting the concept of constructive waiver), but these decisions do not affect <u>Mauney</u>'s analysis of the waiver issue. Rather, the Supreme Court continues to recognize that Congress, if acting within its spending power, may condition a state's participation in a federal spending program on the state's waiving its Eleventh Amendment immunity to claims arising from that program. <u>See</u> <u>College Savings</u>, 119 S. Ct. at 2231; <u>see also</u> <u>Alden</u>, 119 S. Ct. at 2267. The waiver portion of <u>Mauney</u> has not been undercut by subsequent decisions. Thus this portion of <u>Mauney</u> represents the law of the Circuit and we are bound by it.[5]

   For a federal statute to produce a waiver of a state's immunity through the state's participation in a federal spending program, the statute must provide a clear expression of Congress's "intent to condition participation in the program[] . . . on a State's consent to waive its constitutional immunity." <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 247 (1985).[6] This Court noted in <u>Mauney</u> that there has been some unease in

_____

   [5]For the record, we would have reached the same conclusion regarding waiver even if we had decided the present case in advance of <u>Mauney</u>.

   [6]In Part IV.B of this opinion, we identify three requirements a federal appropriations statute must satisfy before a state's participation in that spending program causes the state to waive its Eleventh Amendment immunity to suits arising from such participation. We do not analyze all three elements here because this Court already has determined in <u>Mauney</u> that Arkansas waived its immunity to suits arising under the IDEA by receiving IDEA funds, and because Arkansas conceded during oral argument that the IDEA was a valid exercise of Congress's spending power and that the state received funds under the IDEA.

-12-

finding that § 1403, the IDEA's abrogation provision, satisfies this requirement, because § 1403 is entitled "Abrogation of state sovereign immunity" and does not mention waiver. See Mauney, 1999 WL 407763, at *11. Although § 1403 has some shortcomings that limit its use as a clear expression of Congress's intent to condition a receipt of IDEA funds on a state's waiving its immunity, another provision of the IDEA reinforces the warning contained in § 1403. That provision, IDEA § 1415, requires states to provide certain procedures for parents who wish to challenge a state's implementation of the "free appropriate public education" standard. See 20 U.S.C.A. § 1415(a) (West Supp. 1999). One of the procedures that must be provided is the opportunity to have IDEA decisions reviewed in federal court. See 20 U.S.C.A. § 1415(i)(2) (West Supp. 1999) (stating that parties who are aggrieved by a decision under the IDEA may file an action in a federal district court); see also 20 U.S.C.A. § 1415(i)(3)(A) (West Supp. 1999) (stating that "district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy"). When it enacted §§ 1403 and 1415, Congress provided a clear, unambiguous warning of its intent to condition a state's participation in the IDEA program and its receipt of federal IDEA funds on the state's waiver of its immunity from suit in federal court on claims made under the IDEA. We therefore hold in accordance with Mauney that Arkansas waived its Eleventh Amendment immunity with respect to IDEA claims when it chose to participate in the federal spending program created by the IDEA.

C.

The Bradleys argue that, even if the ADE could not be sued in federal court, Ex parte Young, 209 U.S. 123 (1908), allows them to seek to enjoin ADE officials, including defendant Crowley, from committing violations of federal law. We agree. Ex parte Young permits a private party to receive prospective injunctive relief in federal court against a state official, even if the Eleventh Amendment otherwise protects the state and its officials from being sued in federal court. See Ex parte

<u>Young</u>, 209 U.S. at 155-56, 159, 166-68 (allowing a federal court to ignore a state's Eleventh Amendment immunity and impose prospective injunctive relief on state officials to enjoin a future violation of federal law); <u>see also</u> <u>Missouri v. Jenkins</u>, 491 U.S. 274, 279 (1989) (stating that a state's Eleventh Amendment immunity does not prevent "an award of attorney's fees ancillary to a grant of prospective relief" pursued under <u>Ex parte Young</u>).[7]

Furthermore, even if <u>Ex parte Young</u> did not apply, the Bradleys could pursue any remedies available under the IDEA against Crowley because, when Arkansas waived its own Eleventh Amendment immunity with respect to IDEA claims, it also waived any Eleventh Amendment immunity Crowley might have had as a state official with respect to such claims. "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, <u>qua</u> entity, may possess, such as the Eleventh Amendment." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985). Under <u>Graham</u>, when Arkansas waived its own Eleventh Amendment immunity from suits brought under the IDEA, the state also waived the Eleventh Amendment immunity of its officials from such suits. <u>See</u> <u>Duffy v. Riveland</u>, 98 F.3d 447, 452 n.4 (9th Cir. 1996). The District Court, therefore, may exercise jurisdiction over the Bradleys' IDEA claims against Crowley and may provide any relief that the IDEA authorizes.

---

[7]The Bradleys make no claim for compensatory or punitive damages, damages not being available for violations of the IDEA. <u>See</u>, <u>e.g.</u>, <u>Thompson v. Board of Special Sch. Dist. No. 1</u>, 144 F.3d 574, 579 (8th Cir. 1998); <u>Heidemann v. Rother</u>, 84 F.3d 1021, 1033 (8th Cir.1996).

IV.

Next, we turn to Arkansas's contention that the Eleventh Amendment prevents the states from being forced to litigate in federal court claims arising under § 504 of the Rehabilitation Act. Section 504 states in part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a) (1994). Arkansas concedes that the ADE receives federal funds, and apparently the state does not dispute that § 504 prohibits the ADE from discriminating on the basis of disability. The state does assert that the Eleventh Amendment bars federal courts from exercising judicial power over the state with respect to claims brought under § 504. Therefore, we apply the same analysis that we applied to the IDEA in Parts III.A and III.B of this opinion to determine whether Jim and Susan C. may pursue their § 504 claim against the ADE in federal court.

A.

To determine whether § 504 abrogates the states' Eleventh Amendment immunity, we again engage in Seminole Tribe's two-part analysis. First, the statute must contain an unequivocal expression of Congress's intent to abrogate the states' Eleventh Amendment immunity. In 1985, the Court in Atascadero held that § 504 lacked the required expression of intent. See 473 U.S. at 247. Congress responded by enacting an abrogation provision, now codified as 42 U.S.C. § 2000d-7 (1994). See Lane v. Pena, 518 U.S. 187, 198 (1996) (discussing the legislative history of § 2000d-7). This abrogation provision states:

(a) General provision

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, Title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

42 U.S.C. § 2000d-7(a) (1994) (internal citations omitted). This Court already has concluded in Alsbrook and Mauney that abrogation provisions mirroring 42 U.S.C. § 2000d-7 adequately express Congress's intent to abrogate. See Alsbrook, 1999 WL 521709, at *4 (examining the ADA abrogation provision, codified at 42 U.S.C. § 12202 (1994)); Mauney, 1999 WL 407763, at *11 (examining the IDEA's abrogation provision, 20 U.S.C. § 1403). Because we find no material differences between § 2000d-7 and the abrogation provisions considered and found adequate in Alsbrook and Mauney, we conclude that § 504 also satisfies the first part of the Seminole Tribe test.

The second part of the Seminole Tribe test, as discussed supra in Part III.A, requires that a statute be an appropriate exercise of Congress's constitutional powers for the statute's abrogation provision to have effect. See Seminole Tribe, 517 U.S. at 55. The United States, intervening in this litigation, argues that § 504 is a valid exercise of Congress's power under § 5 of the Fourteenth Amendment. Congress did

not rely expressly on its § 5 power when it enacted § 504 or its abrogation provision, 42 U.S.C. § 2000d-7.  See Franks v. Kentucky Sch. for the Deaf, 142 F.3d 360, 363 (6th Cir. 1998).  But there is no requirement that a statute specifically refer to § 5 of the Fourteenth Amendment for the statute to be a valid exercise of that constitutional power.  See EEOC v. Wyoming, 460 U.S. 226, 243 n.18 (1983) (stating that Congress need not "recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection' for the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise" (internal quotation and citation omitted)); see also Humenansky v. Regents of the Univ. of Minn., 152 F.3d 822, 830 (8th Cir.1998).  "As long as Congress had such authority as an objective matter, whether it also had the specific intent to legislate pursuant to that authority is irrelevant."  Crawford v. Davis, 109 F.3d 1281, 1283 (8th Cir. 1997).  Therefore, although the legislative history of § 504 does not mention  § 5 of the Fourteenth Amendment, we must consider whether Congress has the constitutional power under § 5 of the Fourteenth Amendment to enact § 504.  Accordingly, we examine whether Congress adequately identified the constitutional transgressions it sought to remedy, and whether § 504 is properly tailored, with the requisite congruity and proportionality, to remedy those transgressions.  See Florida Prepaid, 119 S. Ct. at 2207; Boerne, 512 U.S. at 520.

When we consider the legislative history of § 504 and its abrogation provision, we find little indication that Congress properly identified constitutional transgressions it sought to remedy by enacting § 504.  In fact, the legislative history is largely silent regarding the reason § 504 was included in the RA.  The Joint Explanatory Statement of the Committee of the Conference, for example, does not mention § 504.  See J. Conf. Rep. No. 93-500, reprinted in 1973 U.S.C.C.A.N. 2143; see also Richard K. Scotch, From Good Will to Civil Rights: Transforming Federal Disability Policy 54 (1984) ("It appears that most members of Congress either were unaware that § 504 was included in the act or saw the section as little more than a platitude, a statement of a desired goal with little potential for causing institutional change.").  Similarly, the legislative history of the abrogation provision does not

identify constitutional transgressions that make such a provision appropriate. The legislative history of § 2000d-7 instead reveals only that Congress sought to override the Supreme Court's decision in <u>Atascadero</u> by providing an unequivocal expression of Congress's intent to abrogate the states' immunity. <u>See</u>, <u>e.g.</u>, 132 Cong. Rec. S28622-24 (daily ed. Oct. 3, 1986) (statement of Sen. Cranston and attached letter from John R. Bolton, Assistant Attorney General, stating that the purpose of the Civil Rights Remedies Equalization Act is to remedy the statutory flaw identified in <u>Atascadero</u>). The legislative history apparently lacks any indication of why Congress thought such abrogation was necessary or appropriate.

We again refrain from relying on Congress's failure to identify properly the evil it sought to remedy, however, because this issue was not fully briefed and would not affect the outcome of our analysis. Instead, <u>Alsbrook</u> compels us to conclude that § 504 reaches beyond the scope of Congress's § 5 power. As noted <u>supra</u> in Part III.A, this Court determined in <u>Alsbrook</u> that Title II of the ADA exceeds Congress's § 5 power because the ADA is not merely remedial, but provides substantive rights in excess of those that are protected by the Constitution from impairment by government action. <u>See</u> <u>Alsbrook</u>, 1999 WL 521709, at *6. <u>Alsbrook</u> requires us to reach the same conclusion here, because the ADA and § 504 provide essentially the same protections for the same group of individuals, people with disabilities. <u>See</u> § 29 U.S.C. 794(d) (1994) (directing that courts should use the same standard to determine if § 504 and the sections of the ADA relating to employment have been violated).[8] The only difference

_____

[8]Regulations promulgated under the RA require schools to provide a "free appropriate public education," the same standard imposed by the IDEA. <u>See</u>, <u>e.g.</u>, 34 C.F.R. § 104.33(a) (1998) (requiring recipients of federal funds that operate public elementary or secondary education programs to provide a free appropriate public education to qualified persons with disabilities). We already have determined that the "free appropriate public education" standard exceeds the constitutional burdens imposed by the Equal Protection Clause. <u>See</u> <u>supra</u> Part III.A. These regulations, therefore, do not save § 504's abrogation provision.

between the ADA and § 504 is § 504's application only to recipients of federal funds. See Randolph v. Rogers, 170 F.3d 850, 858 (8th Cir. 1999) ("The ADA and [§ 504 of the] RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.'") (quoting Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998)). This distinction is immaterial to our § 5 analysis.

This Court determined in Alsbrook that the ADA employment provisions were not an appropriate exercise of Congress's § 5 power because the ADA imposes duties upon the states exceeding those commanded by the Fourteenth Amendment. Applying the reasoning of Alsbrook, we conclude that § 504 does not abrogate the states' Eleventh Amendment immunity.[9]

---

[9]In concluding that § 504 does not abrogate the states' immunity, we recognize the existence of decisions to the contrary by the Fourth, Fifth, and Ninth Circuits that predate the Supreme Court's Alden trilogy. See Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 178 F.3d 212, 222-23 (4th Cir. 1999); Coolbaugh v. Louisiana, 136 F.3d 430, 438 (5th Cir.), cert. denied, 119 S. Ct. 58 (1998); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997), cert. denied, 118 S. Ct. 2340 (1998). We also are aware of dicta contained in earlier Supreme Court opinions to the effect that § 504 abrogated the states' immunity. See, e.g., Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 72 (1992) (in which the Court, while considering whether Title IX creates an implied right of private action, stated that Congress when enacting 42 U.S.C. § 2000d-7 "abrogated the States' Eleventh Amendment immunity under Title IX, Title VI, § 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975"). This sort of dicta, unsupported by Seminole Tribe's abrogation analysis, is probably best read simply as a statement of historical legislative fact rather than as a statement of constitutional law. To give it import as a statement of constitutional law would be to render it out of step with the Court's more recent decisions.

B.

We next consider whether Arkansas waived its Eleventh Amendment immunity with respect to claims arising under § 504 by accepting federal funds. Examining the Supreme Court's decisions in Atascadero and Pennhurst State School & Hospital v. Halderman, 451 U.S. 1 (1981), we find three requirements that must be satisfied if a state's participation in a federal spending program is to be held to constitute a waiver of the state's Eleventh Amendment immunity against claims arising under that program. The three requirements are: (1) the federal spending program must represent a valid exercise of Congress's spending power; (2) the statute creating the federal spending program must contain a clear, unambiguous warning that Congress intends to exact waiver of Eleventh Amendment immunity as a condition for participating in the program; and (3) the state must have participated in the federal spending program. See Atascadero, 473 U.S. at 247;Pennhurst, 451 U.S. at 17; see also Abril v. Virginia, 145 F.3d 182, 190-91 (4th Cir. 1998) (formulating a two-factor test to determine if states have waived their immunity).

Section 504 fails the first requirement because it is not a valid exercise of Congress's spending power. College Savings recognizes that Congress may require states to comply with conditions to receive federal funds, including waiving their Eleventh Amendment immunity. See College Savings, 119 S. Ct. at 2231. College Savings warns, however, that "the financial inducements offered by Congress might be so coercive as to pass the point at which pressure turns into compulsion." Id. (internal quotations and citations omitted). There are also limitations on the conditions that Congress may impose on a state's receipt of federal funds. One of these limitations is that "conditions must . . . bear some relationship to the purpose of the federal spending; otherwise, of course, the spending power could render academic the Constitution's other grants and limits of federal authority." New York v. United States, 505 U.S. 144, 167 (1992) (internal citation omitted).

Section 504 and its abrogation provision impose overly broad conditions on state agencies such as the ADE. Section 504 prohibits "any program or activity receiving federal funding" from treating an individual differently "solely by reason of" that person's disabilities. See 29 U.S.C. § 794(a). "Program or activity" is defined broadly to include "all of the operations" of state departments, agencies, or instrumentalities. See 29 U.S.C. § 794(b)(1)(A). With these provisions, § 504 mandates that Arkansas waive its Eleventh Amendment immunity to all claims arising under § 504 if it receives any federal funding, even funding unrelated to the state's obligations to comply with § 504 or the rest of the RA.

Congress's imposition of such conditions on a state violates the Constitution because it amounts to impermissible coercion: Arkansas is forced to renounce all federal funding, including funding wholly unrelated to the RA, if it does not want to comply with § 504. Congressional imposition of such a condition does not give Arkansas, or any other state, a meaningful choice regarding whether to receive federal funding and waive its Eleventh Amendment immunity to suits arising under § 504 or reject funding and retain its Eleventh Amendment immunity to such suits.

The condition § 504 imposes on recipients of federal funds exceeds the ordinary quid pro quo involved in a proper exercise of Congress's spending power. See Pennhurst, 451 U.S. at 17 (stating that "legislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress's power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'"). Therefore, § 504 is not a valid exercise of Congress's spending power, and Arkansas by receiving federal funds did not waive its Eleventh Amendment immunity to suits arising from alleged violations of § 504. We reverse the District Court's order in Jim C. to the extent it holds that it may exercise jurisdiction over Jim and Susan C.'s § 504 claim, and remand the case to the District

Court for dismissal of the claim on the basis of Arkansas's Eleventh Amendment immunity.

## V.

For the reasons stated above, we affirm the orders in 98-1010 and 98-1830 with regard to the IDEA, not on the abrogation grounds upon which those orders relied, but on the grounds that Arkansas waived its Eleventh Amendment immunity with respect to claims arising under the IDEA by voluntarily participating in this federal spending program. We reverse the order in 98-1830 to the extent it rejects Arkansas's assertion of Eleventh Amendment immunity with respect to Jim and Susan C.'s claim that the ADE violated § 504 of the Rehabilitation Act, and remand for dismissal of the plaintiffs' § 504 claim on the basis of the state's Eleventh Amendment immunity. Both cases are remanded for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.