RICHARD S. ARNOLD, Circuit Judge,
joined by WOLLMAN, Chief Judge, and McMILLIAN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.
Plaintiffs, parents of a child with autism, brought this suit against the defendant, the Arkansas Department of Education. They alleged that the defendant had failed to comply with its obligations under certain statutes, including Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The defendant moved to dismiss the suit, asserting sovereign immunity, as recognized by the Eleventh Amendment. The District Court[1] denied the motion, holding that the abrogation provision of Section 504, 42 U.S.C. § 2000d-7(a)(l), was a valid exercise of Congress’s power under Section 5 of the Fourteenth Amendment. On appeal, a panel of this Court reversed, holding that Section 504 could not be upheld as Section 5 legislation. Bradley v. Arkansas Department of Education, 189 F.3d 745, 756 (8th Cir.1999). The panel then considered whether Arkansas had waived its sovereign immunity with respect to Section 504 by accepting federal funds. The panel held that there was no waiver, concluding that Section 504 was not a valid exercise of Congress’s spending power because the conditions it placed on a State’s receipt of federal funds were too broad and therefore coercive. Id. at 758. We granted plaintiffs’ suggestion for rehearing en banc on the spending-power issue alone, vacating that portion of the panel’s opinion and judgment. We hold that Section 504 is a valid exercise of Congress’s spending power, and that Arkansas waived its immunity with respect to Section 504 suits by accepting federal funds. The judgment of the District Court, denying the State’s motion to dismiss, will therefore be affirmed.
Section 504 of the Rehabilitation Act prohibits “any program or activity” that receives federal financial assistance from discriminating against a qualified individual with a disability. 29 U.S.C. § 794(a). The statute, in relevant part, defines “program or activity” as:
all of the operations of—
(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
*1081 (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;
any part of which is extended Federal financial assistance.
29 U.S.C. § 794(b). Under this definition, the State itself as a whole is not a program or activity. Rather, as we have previously noted, “only the department or agency which receives [or distributes] the aid is covered.” Klinger v. Dep’t of Corrections, 107 F.3d 609, 615 (8th Cir.1997) (quoting S.Rep. No. 100-64, 100th Cong., 2d Sess. 4 (1988), reprinted in 1988 U.S.C.C.A.N. (Legislative History) 3, 6).[2] The acceptance of funds by one state agency therefore leaves unaffected both other state agencies and the State as a whole.[3]
The Rehabilitation Act requires States that accept federal funds to waive their Eleventh Amendment immunity to suits brought in federal court for violations of Section 504. 42 U.S.C § 2000d-7. Since Section 504 covers only the individual agency or department that accepts or distributes federal funds, this waiver requirement is limited in the same way. By accepting funds offered to an agency, the State waives its immunity only with regard to the individual agency that receives them. A State and its instrumentalities can avoid Section 504’s waiver requirement on a piecemeal basis, by simply accepting federal funds for some departments and declining them for others. The State is accordingly not required to renounce all federal funding to shield chosen state agencies from compliance with Section 504.
The defendant argues that Section 504’s waiver requirement exceeds Congress’s spending power by placing overly broad and therefore coercive conditions on federal funds. We disagree. Congress is empowered to “lay and collect Taxes, Duties, Imposts, and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States.” U.S. Const, art. I, § 8, cl. 1. “Incident to this power, Congress may attach conditions on the receipt of federal funds .... ” South Dakota v. Dole, 483 U.S. 203, 206, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). Specifically, Congress may require a waiver of state sovereign immunity as a condition for receiving federal funds, even though Congress could not order the waiver directly. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 119 S.Ct. 2219, 2231, 144 L.Ed.2d 605 (1999). While it appears, as the defendant urges, that the “financial inducements” employed by Congress can become so “coercive as to cross the point where ‘pressure turns into compulsion,’ ” that limit has not been crossed here. Id. (citations omitted).
To avoid the effect of Section 504 on the Arkansas Department of Education, the State would be required to sacrifice federal funds only for that department. This requirement is comparable to the ordinary quid pro quo that the Supreme Court has repeatedly approved; the State is offered federal funds for some activities, but, in *1082 return, it is required to meet certain federal requirements in carrying out those activities. See, e.g., Lau v. Nichols, 414 U.S. 563, 566-67, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) (upholding Congress’s power to condition federal education funds on non-discrimination in the funded programs). In these cases, the Court has found no coercive interference with state sovereignty because the State could follow the “ ‘simple expedient’ of not yielding....” State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 143-44, 67 S.Ct. 544, 91 L.Ed. 794 (1947). Likewise here, the Arkansas Department of Education can avoid the requirements of Section 504 simply by declining federal education funds. The sacrifice of all federal education funds, approximately $250 million or 12 per cent, of the annual state education budget according to the 1999-2001 Biennial Budget, 28-29, would be politically painful, but we cannot say that it compels Arkansas’s choice. Cf. New York v. United States, 505 U.S. 144, 168, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) (“By [employing the spending power to attach conditions on the States’ receipt of federal funding], as by any other permissible method of encouraging a State to conform to federal policy choices, the residents of the State retain the ultimate decision as to whether or not the State will comply. If a State’s citizens view federal policy as sufficiently contrary to local interests, they may elect to decline a federal grant.”) The choice is up to the State: either give up federal aid to education, or agree that the Department of Education can be sued under Section 504. We think the Spending Clause allows Congress to present States with this sort of choice.
With regard to the requirements of Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 247, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), the Rehabilitation Act’s waiver provision, 42 U.S.C. § 2000d-7(a)(l), provides a clear expression of Congress’s “intent to condition participation in the program[ ] ... on a State’s consent to waive its constitutional immunity.” See Lane v. Pena, 518 U.S. 187, 116 S.Ct. 2092, 2100, 135 L.Ed.2d 486 (1996); Little Rock School District v. Mauney, 183 F.3d 816, 831 (8th Cir.1999). We hold, therefore, that Arkansas waived sovereign immunity, with respect to suits under Section 504 against the Department of Education, when it chose to participate in the federal spending program created by that Section.
The panel opinion took the position that the waiver required would cover all activities of the State, not just the activities of the department or departments receiving federal funds. As a matter of statutory interpretation, we disagree: for reasons we have given, Section 504’s definition of “program or activity” is not that broad. We acknowledge that the waiver does cover all activities of the Department of Education, and not merely those activities specifically supported by Section 504 funds. We do not consider such a choice unconstitutionally “coercive.” The State may take the money or leave it. Other than the vacated panel opinion in this case, we know of no authority holding any choice so coercive as to exceed the limits of the Spending Clause. Sovereign states are fully competent to make their own choice.
The judgment is affirmed.

. The Hon. Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

. Klinger dealt with Title IX’s definition of "program or activity,” 20 U.S.C. § 1687, which is identical to the definition in Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(b). Both Title IX and Section 504 were amended by the Civil Rights Restoration Act of 1987, Pub.L. No. 100-259, 102 Stat. 28 (1988), to add this definition of "program or activity.”

. If the entire state government were subject to Section 504 whenever any of its parts received federal funds, then subsection (b)(1)(B) would be superfluous; both the distributing and receiving state entities would be already covered under (b)(1)(A) whenever either received federal funds. Other circuits interpreting this definition of "program or activity” have come to the same conclusion. Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 427 (5th Cir.1997); Schroeder v. City of Chicago, 927 F.2d 957, 962 (7th Cir.1991).