BOWMAN, Circuit Judge,
dissenting.
I respectfully dissent. While I agree with the Court’s decision that the State of Nebraska, the Nebraska Department of Health and Human Services, and various state officials (collectively, the defendants or Nebraska) were not coerced into waiving their Eleventh Amendment immunity, I would reverse the District Court’s decision because the defendants did not knowingly waive their Eleventh Amendment immunity at the time Nebraska accepted federal funds for its foster care and adoption programs.
The Court accurately notes that the Supreme Court has said that an Eleventh Amendment waiver by a state must be clear, knowing, and intentional, see ante at 600 (citing Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675-76, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)), and that in assessing whether there has been a knowing waiver of sovereign immunity, courts must “‘indulge every reasonable presumption against waiver’ of fundamental constitutional rights,” Coll. Sav. Bank, 527 U.S. at 682, 119 S.Ct. 2219 (quoting Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937)). The opinion of the Court, however, is not faithful to these teachings. Instead, the opinion merely pays lip service to the Supreme Court’s admonition that we must indulge every reasonable presumption against waiver. In reality, the Court indulges every presumption in favor of finding a waiver by Nebraska of its Eleventh Amendment immunity.
Nebraska argues, and I agree, that prior to our 1999 decisions in Alsbrook v. City of *605 Maumelle, Arkansas, 184 F.3d 999 (8th Cir.1999) (en banc) (Title II of the ADA), and Bradley v. Arkansas Department of Education, 189 F.3d 745 (8th Cir.1999) (§ 504) (subsequent history omitted), and the Supreme Court’s 2001 decision in Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the state had no reason to doubt the validity of Congress’s asserted abrogation of state sovereign immunity under the ADA or § 504. See ante at 600-601 (discussing Congress’s intent to abrogate state sovereign immunity in Title II of the ADA and § 504 of the Rehabilitation Act and acknowledging our decisions that the abrogation clauses in those acts were not valid exercises of Congress’s power under § 5 of the Fourteenth Amendment). The defendants could not know that they retained any sovereign immunity to waive under § 2000d-7 because they would have been justified in their belief that Nebraska’s immunity from suit had already been abrogated by Congress under Title II when the state accepted Rehabilitation Act funds from roughly 1993 to 1996. See Garcia v. S.U.N.Y. Health Sciences Ctr., 280 F.3d 98, 113-15 (2d Cir.2001), discussed by the Court ante at 600-601. Consistent with the decisions of the Second Circuit and other courts (cited by the Court ante at 601) that have recently addressed this issue, I would hold that Nebraska did not knowingly waive its Eleventh Amendment immunity by accepting Rehabilitation Act funds because, at the pertinent time the state accepted those funds, it had no reason to doubt the validity of Congress’s abrogation of its Eleventh Amendment immunity under § 504. Simply put, the defendants “did not know that they retained any sovereign immunity to waive.” Pace v. Bogalusa City Sch. Bd., 325 F.3d 609, 617 (5th Cir.), reh’g en banc granted, 339 F.3d 348 (5th Cir.2003); cf. Douglas v. Cal. Dep’t of Youth Auth., 285 F.3d 1226, 1231 (9th Cir.2002) (O’Scannlain, J., dissenting from denial of reh’g en banc) (“How could a State waive that which has already been abrogated by Congress?”). Adhering to the stringent waiver standard articulated by the Supreme Court in College Savings Bank, I conclude that Nebraska did not knowingly relinquish its sovereign immunity to suit under § 504 by accepting federal funds for its adoption and foster care programs.
Our en banc decision in Jim C. v. United States, 235 F.3d 1079 (8th Cir.2000) (en banc), cert. denied, 533 U.S. 949, 121 S.Ct. 2591, 150 L.Ed.2d 750 (2001), does not foreclose consideration of whether Nebraska knowingly waived its right to sovereign immunity from suit for § 504 claims by accepting Rehabilitation Act funds because the issue was never raised in that case. We simply considered whether § 504 was a valid exercise of Congress’s spending power and whether Arkansas waived its sovereign immunity to suit under § 504 by accepting federal funds. Id. at 1080. We did not address, nor have we ever addressed, the precise issue before us now: whether the state made a knowing waiver.
Finally, I do not believe the Court’s reliance on “established principles of contract law” is well-founded. Ante at 603. Indeed, the Court cites no authority for its application of contract law to this case. We are dealing here not merely with a “contract,” if that is even a correct way to view the statutory abrogation-plus-waiver-equals-receipt-of-federal-funds arrangement at issue in this case. Instead, we are dealing with a sovereign state, its relationship to the federal government (a subject on which the Constitution has a great deal to say), and what must be shown to establish that the state, as a matter of constitutional law, has knowingly waived its Eleventh Amendment immunity. Under the standards of College Savings Bank and its *606 declared presumption against such waivers, the requisite showing has not been made.
Regarding the Court’s speculations as to the federal government’s remedy in the event a knowing waiver is not found, i.e., could the government recover the funds it advanced to Nebraska, I simply note that this is not an issue raised or briefed in the present appeal. Unless and until the government were to assert a claim to get some or all of the money back, it could not become an issue that would reach our Court. Such a claim would necessarily raise novel and complex issues. It is best left for another day, if such a day were ever to come. Meanwhile, speculation concerning whether Nebraska would have accepted the Rehabilitation Act funds, had it known that its sovereign immunity was not waived before it accepted the federal funds but would be waived when it took the money, is irrelevant to the legal question at issue.
For the reasons stated, the plaintiffs’ claims brought under § 504 of the Rehabilitation Act should be barred.