Michelle CRAWFORD, Appellee,

v.

Michael DAVIS, Individually and in His Official Capacity as Instructor of the University of Central Arkansas, Defendant,

Ron Williams, Individually and in His Official Capacity as Assistant to the President of the University of Central Arkansas; University of Central Arkansas; and Winfred L. Thompson, in His Official Capacity as President of the University of Central Arkansas, Appellants.

No. 96–1464.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 22, 1996.

Decided March 27, 1997.

Angela S. Jegley, Assistant Attorney General, Little Rock, AR, argued, for appellants.

Lewis W. Littlepage, Little Rock, AR, argued, for appellee.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE [1], District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Certain defendants in a sexual harassment lawsuit appeal the district court's denial of their summary judgment motions. We affirm in part and reverse in part.

## I.

In September, 1994, a series of incidents occurred that Michelle Crawford believes constituted *"quid pro quo"* sexual harassment of her by Michael Davis, one of her instructors at the University of Central Arkansas ("UCA"). After turning to several other professors at UCA for help and after filing an informal complaint against Mr. Davis, Ms. Crawford ultimately initiated a formal grievance under UCA's sexual harassment policy. The University Sexual Harassment Committee heard her grievance and recommended to Winfred Thompson, UCA's president, that Mr. Davis's employment be terminated. Although Dr. Thompson accepted this recommendation and fired Mr. Davis, Ms. Crawford remained unhappy with UCA's resolution of her complaint.

Ms. Crawford then filed suit under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, *see* 20 U.S.C. §§ 1681–1688, against UCA, Dr. Thompson in his official capacity, Ron Williams (Dr. Thompson's assistant) in both his individual and official capacities, and Mr. Davis in both his individual and official capacities. She advanced an array of liability theories based on Title IX and equal protection principles, only three of which concern us here. Ms. Crawford first contends that UCA and its officials are strictly liable for Mr. Davis's actions under the theory of *respondeat superior.*

She also asserts what we call a "failure-to-train" claim, that is, that UCA and its officials are liable because they failed to ensure that UCA's sexual harassment policy was known to its employees. Ms. Crawford last contends that UCA and its officials were participants in the harassment because of the manner in which they handled her complaints and grievances.

Asserting Eleventh Amendment immunity and qualified immunity, the defendants moved for summary judgment, which the district court granted in part and denied in part. After the court's order, three sets of claims, based on the liability theories discussed above, remained: § 1983 claims for injunctive relief against UCA and defendants Williams and Thompson in their official capacities, § 1983 claims for monetary damages against defendants Williams and Davis in their individual capacities, and a Title IX claim against UCA and defendants Williams, Thompson, and Davis in their official capacities. UCA and defendants Williams and Thompson in their official capacities appeal the denial of Eleventh Amendment immunity and qualified immunity with respect to these remaining causes of action. We have jurisdiction to hear such appeals pursuant to *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

## II.

### A.

■ We must first resolve the defendants' contention, under *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that the Eleventh Amendment deprives us of jurisdiction to hear Ms. Crawford's claims. In *Seminole Tribe,* the Supreme Court examined Congress's power to abrogate the states' Eleventh Amendment immunity and concluded that Congress may do so if it unequivocally expresses its intent to do so, *id.* at ——, 116 S.Ct. at 1123, and if it legislates "pursuant to a constitutional provision granting Congress

---

1. The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

the power to abrogate," *id.* at ——, 116 S.Ct. at 1125. Because Congress need not expressly invoke the authority of a specific constitutional provision to act pursuant to it, *see EEOC v. Wyoming,* 460 U.S. 226, 243–44 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983), and *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 424, 92 L.Ed. 596 (1948), we believe that the latter condition requires us to make an objective inquiry, namely, whether Congress could have enacted the legislation at issue pursuant to a constitutional provision granting it the power to abrogate. As long as Congress had such authority as an objective matter, whether it also had the specific intent to legislate pursuant to that authority is irrelevant.

■ By overruling *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that the Interstate Commerce Clause (like § 5 of the Fourteenth Amendment) granted Congress the power to abrogate the states' Eleventh Amendment immunity, the Court in *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1128, limited solely to § 5 of the Fourteenth Amendment the authority of Congress to abrogate the states' Eleventh Amendment immunity. The defendants contend that Congress enacted Title IX pursuant to the Spending Clause, and therefore that § 5 does not give it the ability to abrogate the states' immunity to Title IX claims. We disagree.

We note at the outset that Congress has unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity for Title IX claims, *see* 42 U.S.C. § 2000d–7(a)(1), and *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir.1995), thus satisfying the first requirement of *Seminole Tribe.* The resolution of the defendants' contention therefore turns on whether Congress, as an objective matter, could have enacted Title IX pursuant to § 5 of the Fourteenth Amendment. *See Wyoming,* 460 U.S. at 243–44 n. 18, 103 S.Ct. at 1064 n. 18, and *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 840–42 (6th Cir. 1997) (applying *Seminole Tribe* to the Equal Pay Act).

Section 5 of the Fourteenth Amendment expressly grants Congress broad authority to enforce the amendment's substantive provisions "by appropriate legislation." U.S. Const. amend. XIV, § 5; *see also Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Because the Supreme Court has repeatedly held that those substantive provisions proscribe gender discrimination in education, *see, e.g., United States v. Virginia,* —— U.S. ——, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996), we are unable to understand how a statute enacted specifically to combat such discrimination could fall outside the authority granted to Congress by § 5.

### B.

We next address the defendants' argument that Title IX subsumes Ms. Crawford's § 1983 claims because of the holding in *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). The *Sea Clammers* doctrine, the defendants contend, precludes Ms. Crawford's § 1983 claims (based on Title IX and the Equal Protection Clause) for injunctive relief against UCA and defendants Williams and Thompson in their official capacities, and for monetary damages against defendants Williams and Davis in their individual capacities, leaving only Ms. Crawford's Title IX claims against UCA and defendants Williams, Thompson, and Davis in their official capacities.

The question of whether Title IX subsumes § 1983 claims is one of first impression in our court, and we are faced with a split of authority in other circuits. The Sixth and Tenth Circuits have held that Title IX does not subsume § 1983 claims, *see,* respectively, *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 722–24 (6th Cir.1996), and *Seamons v. Snow,* 84 F.3d 1226, 1233–34 (10th Cir.1996), while the Third and Seventh Circuits have held that it does, *see,* respectively, *Williams v. School Dist. of Bethlehem,* 998 F.2d 168, 176 (3rd Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994), and *Waid v. Merrill Area Pub. Schs.,* 91 F.3d 857, 862–63 (7th Cir.1996).

■ In *Sea Clammers,* 453 U.S. at 20, 101 S.Ct. at 2626, the Supreme Court held that if

the remedial devices contained in a particular statute are "sufficiently comprehensive," they may provide evidence that Congress intended to preclude suit under § 1983 to redress violations of that statute. To the extent that Ms. Crawford's § 1983 claims are premised on alleged violations of the Equal Protection Clause, we believe that the application of *Sea Clammers* to her claims is plainly inapposite. *Sea Clammers* in no way restricts a plaintiff's ability to seek redress via § 1983 for the violation of independently existing constitutional rights, even if the same set of facts also gives rise to a cause of action for the violation of statutory rights.

■ To the extent that Ms. Crawford's § 1983 claims are based on alleged violations of Title IX, we find unpersuasive the defendants' argument that Title IX contains a "sufficiently comprehensive" remedial scheme. The only enforcement mechanism that Title IX expressly provides is a procedure to terminate federal support to institutions that violate Title IX. *See* 20 U.S.C. § 1682; *see also Cannon v. Univ. of Chicago,* 441 U.S. 677, 683, 99 S.Ct. 1946, 1950, 60 L.Ed.2d 560 (1979). This is a far cry from the "unusually elaborate enforcement provisions" of the statutes at issue in *Sea Clammers,* 453 U.S. at 13, 101 S.Ct. at 2622, which expressly provided for citizen suits and enforcement by government agencies. By holding that Title IX contains not only an implied private right of action, *Cannon,* 441 U.S. at 709, 99 S.Ct. at 1964, but also a damages remedy, *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 76, 112 S.Ct. 1028, 1038, 117 L.Ed.2d 208 (1992), moreover, the Supreme Court has indicated that the sole express enforcement mechanism contained in Title IX is not exclusive. We believe, therefore, that there is no evidence that Congress intended to foreclose the use of § 1983 to redress violations of Title IX. *Accord Lillard,* 76 F.3d at 723.

### C.

■ The defendants' final contention is that the district court erred in not granting qualified immunity from Ms. Crawford's § 1983 and Title IX claims to UCA, defendant Williams in his official capacity, and defendant Thompson in his official capacity. As indicated, we believe that Ms. Crawford asserts three theories of liability against UCA and its officials: *respondeat superior,* failure to train, and participation in the harassment itself. With respect to Ms. Crawford's *respondeat superior* claim, it is well settled that § 1983 does not impose *respondeat superior* liability, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), and we have recently held the same for Title IX. *See Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 468–69 (8th Cir.1996). We are therefore obliged to reject Ms. Crawford's claim that UCA, Mr. Williams, and Dr. Thompson in their official capacities are liable for Mr. Davis's actions under a theory of *respondeat superior.*

Ms. Crawford's other two claims may proceed against the institutional defendants under both § 1983 and Title IX, however, unless they can demonstrate that they are entitled to qualified immunity with respect to those claims. These defendants will merit qualified immunity unless their alleged conduct violated "clearly established statutory or constitutional rights," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) that is, rights the contours of which were clear enough at the relevant time that a reasonable person would have been aware that his or her conduct violated them in the circumstances in which the conduct occurred, *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Although the law construing the specific causes of action and remedies provided for by § 1983 and Title IX continues to evolve, *see, e.g., Kinman,* 94 F.3d at 468–69, it is evident that in 1994 Ms. Crawford had a clearly established right not to be discriminated against or harassed on the basis of her sex. *See Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037. Because significant factual disputes exist with regard to the defendants' actions in preventing and responding to sexual harassment, we cannot say, as a matter of law, that their actions did not violate Ms. Crawford's clearly established statutory and constitutional rights under the circum-

stances. With respect to Ms. Crawford's failure-to-train and participation claims, therefore, we affirm the district court's refusal to grant summary judgment to the institutional defendants on the basis of qualified immunity.

### III.

For the foregoing reasons, we reverse the district court's denial of summary judgment to UCA and defendants Thompson and Williams in their official capacities with respect to Ms. Crawford's *respondeat superior* claim, and we affirm the district court's judgment in all other respects.