**April Marie SCHULTZEN, Plaintiff,**

v.

**WOODBURY CENTRAL COMMUNITY SCHOOL DISTRICT and Larry Bumsted, Individually and in his Official Capacity, Defendants.**

No. C01–4089–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Feb. 19, 2003.

---

Stanley E. Munger, Jay Elliot Denne, Sioux City, IA, for Plaintiff.

Michael J. Frey, Hellige, Lundberg, Meis, Erickson & Frey, Douglas L. Phillips, Klass Stoik Mugan Villone Phillips Orzechowski Clausen, et al., Sioux City, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT LARRY BUMSTED'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ....................................................1049
  A. Procedural Background ..........................................1049
  B. Factual Background ............................................1051

II. LEGAL ANALYSIS ..................................................1052
  A. Standards For Summary Judgment ................................1052
    1. Requirements of Rule 56 .....................................1052
    2. The parties' burdens ........................................1053

B.  Counts I and III of Schultzen's Complaint ............................1053
C.  Claims Pursuant to 42 U.S.C. § 1983 ...............................1054
    1.  Title IX violation ............................................1054
    2.  Constitutional violations under § 1983 ........................1056
        a.  Acting under color of state law ..........................1057
        b.  Causation ...............................................1060
D.  Qualified Immunity ................................................1061
    1.  Arguments of the parties .....................................1061
    2.  Applicable standards .........................................1062
    3.  The test for qualified immunity on summary judgment ...........1063
    4.  Application of the standards .................................1063

III.  CONCLUSION ......................................................1063

According to American Cancer Society estimates for 2002, approximately 170,000 cancer deaths among Americans will be attributable to tobacco use; 154,900 of these from lung cancer. American Cancer Society, *Cancer Prevention & Early Detection—Facts & Figures 2002*, available at *http://www.cancer.org/docroot/STT/stt 0.asp* (2002). The *Cancer Prevention & Early Detection* study found that tobacco use among American high school students, grades nine to twelve, in 1999 was 34 .8 percent, or more than one-third of all high school students nationwide. *Id.* This same study found that in 1999, 29.5 percent of female students in Iowa high schools smoked cigarettes, and of those 19.9 percent smoked cigarettes frequently, higher than the nationwide statistic of 15.6 percent. *Id.* In the present action, the plaintiff's ability to participate in high school extra curricular activities was extinguished when she decided to join that 29.5 percent of Iowa high school females and smoke cigarettes. The plaintiff asserts four counts of discrimination regarding her sus-

pension for twelve weeks from playing volleyball. Plaintiff was suspended because she was caught smoking in violation of defendant school district's good conduct code which prohibits any student who participates in any extra curricular activity of the school from using tobacco. The Iowa High School Athletic Association has found that "Research does not support claims that nicotine found in cigarettes, or smokeless tobacco, enhances athletic performance by improving reaction time, movement time, or total response time." Iowa High School Athletic Association, *Cigarette Use by Teenagers*, Wellness Update 99, #3, available at *http://www.iahsaa.org/wu99–3.htm*. To the contrary, "The physical performance of adolescents is less in those who smoke compared to those who don't." *Id.*[1]

## I.  INTRODUCTION

### A.  Procedural Background

This matter is before the court on defendant Larry Bumsted's ("Bumsted") Motion

---

1.  In addition, the Iowa High School Athletic Association went on to find:

    "Smoking just one cigarette causes a higher resting heart rate, reduces the amount of oxygen in the blood, increases blood pressure, and narrows the blood vessels, including those which supply blood to the heart muscle. This lowers the amount of blood and oxygen pumped by the heart, resulting in less blood and oxygen available to the muscles. Less blood and oxygen available

to the muscles decreases endurance performance.... Smoking also reduces the body's testosterone production. For strength training student-athletes this can have an adverse effect because testosterone stimulates the release of human growth hormone which [*sic*] needed for muscle production. The less testosterone available the less muscle the body is capable of producing."

for Summary Judgment in both his individual and official capacities. Previously, Woodbury Central Community School District ("the school district") moved to dismiss portions of plaintiff April Marie Schultzen's ("Schultzen") complaint on the ground that portions of the complaint fail to state a claim upon which relief can be granted. Namely, the school district asserted that Schultzen's punitive damage claims were not cognizable under Title IX, section 1983, nor under Iowa Code Chapter 216 as against the school district. In her resistance to the school district's motion to dismiss, Schultzen agreed that punitive damages were not available against the school district under either 42 U.S.C. § 1983 or Chapter 216 of the Iowa Civil Rights Act. Schultzen did resist the school district's assertion that Title IX did not provide for an award of punitive damages against a public school district because no court of appeals has of this date decided that issue. Schultzen asserted that she had pled sufficient facts to support a finding of ongoing violations by the defendants, which would allow for an award of punitive damages. On February 22, 2002, this court issued a Memorandum Opinion and Order Regarding Defendant Woodbury Central Community School District's Motion to Dismiss (# 13). In its order, the court granted the school district's motion to dismiss Schultzen's punitive damages claims under Counts I (Title IX), II (section 1983), and III (Chapter 216) because municipal entities are immune from punitive damages under these causes of action. The school district does not participate in Bumsted's motion for summary judgment.

Schultzen asserts four counts of discrimination. Count I alleges violation of Title IX of the Education Amendments of 1972 ("Title IX"), 28 U.S.C. § 1681 et seq., against the school district for alleged discriminatory treatment of females in the school system. Count II states constitutional violations against both the school district and Bumsted, individually and in his official capacity, which Schultzen seeks to vindicate vis-a-vis 42 U.S.C. § 1983. Count III asserts a state-law claim pursuant to the Iowa Civil Rights Act, Iowa Code Chapter 216 and is properly before the court pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Finally, on behalf of a class of other women against whom the defendants have allegedly discriminated based on their gender, Count IV of Schultzen's complaint requests that this court certify this litigation as a class action.[2] Bumsted moves for summary judgment on several grounds, the first of which is that only grant recipients (i.e., schools) can be held liable under Title IX, and by definition grant recipients exclude individuals, thus he cannot be held liable in his individual capacity under Title IX. Secondly, Bumsted claims that he was not acting under color of state law when he reported Schultzen to the school district, and he in turn did not deprive Schultzen of any protected rights because he merely reported what he observed to school officials, and nothing more. Next, Bumsted asserts that he is entitled to qualified immunity. Lastly, Bumsted argues that because Schultzen failed to file a charge of discrimination against him and obtain an administrative release permitting her to file suit against him for an alleged violation of Iowa Code Chapter 216, Schultzen has no state statutory claim against Bumsted.

On October 10, 2002, Schultzen resisted Bumsted's motion for summary judgment, and on October 15, 2002, Bumsted filed a reply in further support of his motion.

---

**2.** The court notes that, while the complaint asserts a class action, the plaintiff has not moved the court to certify the class.

There is a trial set in this matter for April 7, 2003. The plaintiff April Marie Schultzen is represented by Stanley E. Munger and Jay E. Denne of Munger, Reinschmidt & Denne, Sioux City, Iowa. The defendant Larry Bumsted is represented by Douglas L. Phillips of Klass, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, Iowa. The defendant Woodbury Central Community School District, although not a party to this motion, is represented by Michael J. Frey of Hellige, Meis, Erickson & Frey, Sioux City, Iowa. This matter is now fully submitted.

### B. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues for trial, *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990), and the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same). Thus, a summary of the undisputed and disputed facts is essential to the disposition of Bumsted's motion for summary judgment.

Schultzen was a student athlete in the Woodbury Central Community School District system. Bumsted was employed as a part-time police officer for the City of Moville, Iowa, and worked part-time as a bus driver for the school district. On September 9, 2000, Schultzen's brother and father made a report to Bumsted at the Conoco gas station in Moville, Iowa, about an assault on Schultzen's brother. Bumsted called for back-up, and shortly thereafter a Woodbury County Sheriff's Deputy and a member of the Iowa State Patrol arrived at the gas station, as did Schultzen. It was during this time that Bumsted claims he observed Schultzen, who was eighteen years of age, smoking a cigarette. Bumsted contends he and Schultzen conversed at the gas station, and Schultzen told him that "she wasn't doing drugs anymore." Bumsted's Aff., at ¶ 7. Schultzen disputes this contention, and admits only that she talked about the assault on her brother with Bumsted. Schultzen alleges that Bumsted overheard her discussing with the deputy and state trooper "the fact that I [Schultzen] was out for volleyball ... and his [Bumsted's] actions indicated that he knew I would be suspended because of smoking." Pl.'s Aff., at ¶ 3. Furthermore, Schultzen claims that, at the time, Bumsted knew that a Woodbury Central male student by the name of Aaron Ploen had been caught drinking alcohol in violation of the school district's Good Conduct Code and had not been suspended from football. Pl.'s Aff., at ¶ 4. Bumsted denies having any knowledge that male students who violated the school district's Good Conduct Code were allegedly given preferential treatment over females with the same or similar violations. Bumsted's Reply to Pl.'s Stmt. of Additional Facts, at ¶ 1.

According to Bumsted, the following afternoon he saw Principal Wisniewski at Woodbury Central High School and told him that he observed Schultzen smoking. Bumsted's Aff., at ¶ 9. Schultzen does not dispute that Bumsted made his report to Wisniewski the following afternoon, but asserts that Wisniewski told her that Bumsted was in uniform and initially asked Wisniewski whether Schultzen was out for sports. Pl.'s Aff., at ¶ 5. Upon Wisniewski's advising Bumsted that Schultzen played volleyball, Bumsted reported to Wisniewski that he had observed Schultzen smoking. Pl.'s Aff., at ¶ 5. Bumsted states that he was not privy to the conversation between Wisniewski and Schultzen and does not know what Wisniewski told Schultzen. Nevertheless, it is Schultzen's contention that Bumsted reported his ob-

servation of her smoking to the school district so that she would be suspended from extra curricular activities. Pl.'s Aff., at 6. In addition, Schultzen argues that by virtue of his positions as a police officer and Woodbury Central bus driver, Bumsted knew the consequences that attended a student who violated the Good Conduct Code and was aware that male students received preferential treatment. Pl.'s Response to Bumsted's Stmt. of Undisputed Material Facts, at ¶ 1. Bumsted disputes this contention. Bumsted claims that he had never reported a student for a violation before and did not know what consequences would attend Schultzen's conduct. Bumsted admits that he thought Schultzen was out for sports, but claims he made the report because he believed that smoking was against school rules. Bumsted's Aff., at ¶ 10. Schultzen does not dispute that the school district's Good Conduct Code prohibits participants in extra curricular activities from smoking.

On September 12, 2000, Wisniewski confronted Schultzen with Bumsted's allegation that he had observed her smoking. Schultzen admitted that she had been smoking at the Conoco gas station. Because smoking violated the school district's Good Conduct Code, Schultzen was suspended from all extra curricular activities for a period of six weeks. The situation worsened for Schultzen when, on September 12, 2000, her mother questioned Wisniewski about the suspension and was informed that the suspension had been increased to twelve weeks because Schultzen was a repeat offender, having previously violated the school district's Good Conduct Code. The school board affirmed the suspension on September 25, 2000.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the

evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson*, 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel*, 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston*, 133 F.3d at 1107; *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477

U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach*, 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### B. Counts I and III of Schultzen's Complaint

■ As an initial matter, the court addresses Bumsted's contentions regarding Schultzen's allegations in Counts I and III of her complaint. In reference to Count III, Bumsted argues that he is entitled to judgment as a matter of law because Schultzen did not file a charge of discrimination against Bumsted and therefore, did not obtain an administrative release permitting her to file suit against him for alleged violations under IOWA CODE ch. 216. Prior to bringing this action in federal court, Schultzen exhausted her administrative remedies by filing a charge with the Iowa Civil Rights Commission ("ICRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), and received a right-to-sue letter from the ICRC on May 15, 2001. Pl.'s Compl., at Ex. B. However, Schultzen concedes in her Resistance to Defendant

Larry Bumsted's Motion for Summary Judgment that she did not name Bumsted as a party in her Iowa Civil Rights Complaint and therefore, no direct cause of action can lie against Bumsted under IOWA CODE ch. 216. In turn, the court grants summary judgment for Bumsted on Count III of Schultzen's complaint as it applies to Bumsted in his official and individual capacities.

■ With regard to Count I, Bumsted argues that he is not a person against whom relief can be afforded under Title IX because he did not have the power to address and remedy the alleged discrimination. Schultzen acknowledges this court's previous analysis in its Memorandum Opinion and Order Regarding Defendant Woodbury Central Community School District's Motion to Dismiss, for the conclusion that only grant recipients (i.e., schools) can be held liable under Title IX, and by definition grant recipients exclude individuals. *Schultzen v. Woodbury Central Community School District,* 187 F.Supp.2d 1099, 1120–22 (N.D.Iowa 2002); *see Burrow v. Postville Cmty. Sch. Dist.,* 929 F.Supp. 1193, 1207 (N.D.Iowa 1996) ("[A] damage remedy under Title IX is only available against an 'education program or activity receiving Federal financial assistance,' not against individuals."). Thus, Schultzen concedes that no direct cause of action lies against Bumsted under Title IX and the court grants summary judgment in favor of Bumsted on Count I of Schultzen's complaint.

### C. Claims Pursuant to 42 U.S.C. § 1983

#### 1. Title IX violation

■ Although Schultzen concedes that an individual cannot be held liable under Title IX, Schultzen argues that Bumsted can be held liable in his individual capacity pursuant to 42 U.S.C. § 1983 based on an alleged violation of Title IX. Pl.'s Resis-

tance, at 4. For this proposition, Schultzen relies on the case of *Crawford v. Davis,* 109 F.3d 1281 (8th Cir.1997). The plaintiff in *Crawford* was a student at the University of Central Arkansas ("UCA") and alleged that she was the victim of *quid pro quo* sexual harassment at the hands of one of her professors. *Id.* at 1282. Dissatisfied with the UCA's response to her formal complaint, the plaintiff filed suit under 42 U.S.C. § 1983 and Title IX against UCA, UCA's president ("Thompson") in his official capacity, and the president's assistant ("Williams") and the alleged harasser ("Davis") in their official and individual capacities. *Id.* The defendants in *Crawford* moved for summary judgment, which the district court granted in part and denied in part. The plaintiff's claim under section 1983 for monetary damages against defendants Williams and Davis in their individual capacities was among those that survived the defendants' motion for summary judgment. *Id.* However, on appeal, only UCA and defendants Williams and Thompson, in their *official capacities,* challenged the district court's denial of Eleventh Amendment immunity and qualified immunity with respect to the remaining causes of action.

The defendants in *Crawford* argued that Title IX subsumes section 1983 claims because of the *Sea Clammers* doctrine. *Id.* (citing *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). Specifically, the defendants argued that Title IX contained a "sufficiently comprehensive" remedial scheme, thereby evidencing Congress's intent to preclude suit under section 1983 to redress violations of the statute. *Id.* The Eighth Circuit Court of Appeals agreed with the plaintiff that there was no evidence indicating an intent on the part of Congress to foreclose the use of section 1983 to redress violations of Title IX. *Id.* at 1284. However, in reach-

ing this conclusion, the court does not believe that the Eighth Circuit Court of Appeals decided, as Schultzen contends, the issue of whether individual defendants are proper parties to a section 1983 suit premised on alleged violations of Title IX when, presumably, the individuals are not recipients of federal financial assistance. Instead, *Crawford* endorses the position that "Title IX plaintiffs who bring a § 1983 action predicated on constitutional provisions do not circumvent Title IX procedures or gain access to remedies not available under Title IX." *Seamons v. Snow,* 84 F.3d 1226, 1233 (10th Cir.1996) (citing *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 723 (6th Cir.1996)). Any questions surrounding the scope of the Eighth Circuit Court of Appeals's decision in *Crawford* and its potential applicability to the liability of individuals under section 1983 for Title IX violations, are dispelled by the Sixth and Tenth Circuit Courts of Appeals's cases the Eighth Circuit Court of Appeals relied upon in reaching its conclusion in *Crawford. Id.* at 1283.

In *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 722–24 (6th Cir.1996), the Sixth Circuit Court of Appeals found that the *Sea Clammers* doctrine presented "no impediment to the plaintiffs' pursuit of remedies for alleged violations of substantive due process." *Id.* at 724. Separate and apart from this finding, and much later in its opinion, the Sixth Circuit Court of Appeals declined to address the issue of whether the individual defendants in the case were proper parties to the Title IX lawsuit, let alone liable under section 1983 for Title IX violations, because the defendants failed to brief the issue. *Id.* at 728. However, the *Lillard* court indicated its "strong skepticism that these individual defendants can be held liable under Title IX." *Id.* (citing *Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 77 n. 3 (3rd Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988).

Similarly, in *Seamons v. Snow,* 84 F.3d 1226, 1233–34 (10th Cir.1996), the Tenth Circuit Court of Appeals agreed with the Sixth Circuit in *Lillard,* and concluded that the plaintiff's section 1983 action was not barred by Title IX. *Id.* at 1234. The plaintiff in *Seamons* alleged that he was subjected to a hostile environment as a result of his reporting a hazing incident on the football team which prompted the school district to cancel the final game of the season. *Id.* at 1230. The plaintiff asserted federal causes of action under 42 U.S.C. §§ 1983, 1985, and Title IX against the football team coach and principal in both their individual and official capacities as employees and officers of the defendant high school and county school district. *Id.* at 1229. The district court granted defendants' motion to dismiss and the plaintiff appealed. *Id.* at 1229–30. In agreeing with the Sixth Circuit in *Lillard* that Title IX does not subsume section 1983 claims, the Tenth Circuit declared that "Of course, the 1983 action could not be predicated on a violation of Title IX itself. Such a duplicative effort would be barred." *Id.* at 1234 n. 8 (citing *Starrett v. Wadley,* 876 F.2d 808, 813–14 (10th Cir.1989) ("[A] right created solely under Title VII cannot serve as the basis for an independent remedy under section 1983 . . . . [However,] if a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under section 1983, regardless of Title VII's concurrent application.")).

In light of the fact that the Eighth Circuit Court of Appeals relied on the rationale of these cases in arriving at its decision, this court determines that the Eighth Circuit Court of Appeals in *Crawford* did not intend to extend to plaintiffs seeking to vindicate Title IX claims against individuals, the ability to do so vis-a-vis section 1983. In addition, this court finds that any further doubts regarding the applicability

of the Eighth Circuit Court of Appeals's decision in *Crawford* are resolved in favor of this court's interpretation of *Crawford* by *Kinman v. Omaha Public School District,* 171 F.3d 607 (8th Cir.1999).

The plaintiff in *Kinman* alleged she was subject to a sexually hostile environment created by her sophomore English teacher who initiated and engaged in sexual relations with the plaintiff throughout the remainder of the plaintiff's high school tenure and thereafter. *Id.* at 609. The plaintiff proceeded to bring a claim of sexual harassment under Title IX against the district and assistant superintendent, principal, and teacher in their individual and official capacities. The district court dismissed the claims against the assistant superintendent and principal in their individual capacities and the plaintiff proceeded to trial and prevailed against the defendants in their official capacities. *Id.* With regard to the plaintiff's action against the teacher individually under section 1983 and Title IX, the plaintiff sought an end-of-trial motion for default judgment against the teacher—which she renewed post-trial—who failed to appear at any stage of the proceedings. *Id.* at 610. In denying the plaintiff's motion for default judgment as moot, the district court stated, " '[j]udgment has already been entered by the court against Sheryl McDougall [teacher] in her official capacity,' " and that " 'liability does not lie under Title IX against persons in their individual capacity.' " *Id.* (quoting Order of July, 1998 at 1). The plaintiff asserted on appeal that default judgment could be entered against the teacher under section 1983 based on a violation of Title IX. *Id.* The Eighth Circuit Court of Appeals disagreed, citing other circuit courts of appeals which held that school officials cannot be held liable in their individual capacities under Title IX. *Id.* at 611 (citing *Floyd v. Waiters,* 133 F.3d 786, 789 (11th Cir.), *vacated and remanded,* 525 U.S. 802, 119 S.Ct. 33, 142

L.Ed.2d 25 (1998); *Smith v. Metropolitan Sch. Dist. Perry Township,* 128 F.3d 1014, 1019 (7th Cir.1997); *Lipsett,* 864 F.2d at 901; *see also Lillard,* 76 F.3d at 730 (Nelson, J., concurring) (stating that only educational institutions may be found liable for Title IX violations). *See also National Collegiate Athletic Ass'n v. Smith,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999) (receipt of dues from member colleges and universities does not subject NCAA to suit under Title IX)).

Thus, the *Kinman* court applied this conclusion—that Title IX did not support an action against the teacher in her individual capacity—in the context of section 1983 actions based on violations of Title IX, essentially preventing plaintiffs from circumventing Title IX's narrow language prohibiting discriminatory acts only by grant recipients. *Id.* Applying *Kinman* to the present case, the court concludes that Schultzen's claim against Bumsted in his individual capacity under section 1983 based on a violation of Title IX must fail and the court grants summary judgment on this part of Bumsted's motion.

### 2. Constitutional violations under § 1983

■ In addition to her Title IX complaint, Schultzen seeks recovery under section 1983 for alleged violations of her right to privacy, denial of equal protection, and due process. Pl.'s Compl., at 6, ¶ 27. To hold Bumsted liable under section 1983, Schultzen must demonstrate that the conduct she complains of was "committed by a person acting under color of state law" and such conduct deprived her of "a right secured by the Constitution and laws of the United States." *Roe v. Humke,* 128 F.3d 1213, 1215 (8th Cir.1997) (quoting *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)); see *DuBose v. Kelly,*

187 F.3d 999, 1002 (8th Cir.1999); *Kinman,* 171 F.3d at 611.

#### a. Acting under color of state law

Bumsted acknowledged that he observed Schultzen smoking while working on the evening of September 9, 2000, as a part-time police officer for the City of Moville. However, Bumsted asserts that his statutory duties as a police officer, and thus a state actor, were not implicated because Schultzen, at age eighteen, was of legal age to smoke. Therefore, Bumsted contends that he was not duty bound to report Schultzen's conduct to local law enforcement, let alone school administration. Instead, according to Bumsted, he approached Principal Wisniewski the following day at Woodbury Central regarding his observation of Schultzen smoking because he "thought that Ms. Schultzen was out for sports and believed that smoking was against school rules." Bumsted, Aff., at 000005. Schultzen contends that, not only was Bumsted acting under color of state law when he observed her smoking, but Bumsted made his report to Wisniewski "under the guise of his role as a police officer." Pl.'s Resistance, 4. In addition, Schultzen asserts that Bumsted's conduct caused her to be deprived of her constitutional rights.

The Eighth Circuit Court of Appeals has observed that the color of state law element of section 1983 suits requires that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Roe,* 128 F.3d at 1215 (quoting *West,* 487 U.S. at 48, 108 S.Ct. 2250) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). "It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded." *Id.* at 1216 (quoting *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)) (plurality opinion). In order to determine if a public employee, here a police officer, is acting under color of state law, the court must examine the nature of the officer's conduct and its relationship to the performance of the officer's statutory duties. *See id.* (citing *Martinez v. Colon,* 54 F.3d 980, 986 (1st Cir.1995)). In the absence of such a relationship, the officer cannot be acting under color of state law. *Id.*

In support of his position, Bumsted directs the court's attention to the case of *Roe v. Humke,* 128 F.3d at 1214, in which the plaintiff, an eleven-year-old female, was allegedly sexually assaulted by the defendant. The defendant in *Roe* was employed as a police officer for the city and, as part of his duties, provided security and facilitated programs for the local school where the plaintiff attended. *Id.* The defendant regularly patrolled the school as part of his duties and became acquainted with the plaintiff during the course of these patrols, talking with the plaintiff in the school's parking lot. *Id.* One weekend, with the permission of the plaintiff's parents, defendant drove the plaintiff and one of her friends to his home where the defendant allegedly sexually assaulted the plaintiff. *Id.* 1215–16. The court in *Roe* concluded that the defendant was "neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act," but acting for his own "personal pursuits." *Id.* at 1216. The court cited the district court's findings that the defendant was off-duty, driving his own personal vehicle, and not in uniform when he allegedly sexually assaulted the plaintiff. *Id.*

In addition, the plaintiff in *Roe* argued unsuccessfully that the defendant's credibility was enhanced on account of his being a police officer, and the plaintiff asserted that her parents would not have entrusted

plaintiff with the defendant had he not been a police officer. *Id.* at 1217. The court acknowledged that the plaintiff's position was plausible, but still found that "the knowledge of Humke's [defendant's] status alone by Doe [plaintiff] and her parents is not sufficient to convert the actions Humke took in the pursuit of his private interests into action taken under color of state law." *Id.* The Eighth Circuit Court of Appeals cited two cases in *Roe* where other circuit courts found that the defendants' actions could not be attributable to the state because of the "cloak of authority" held by the defendants. *Id.* (citing *D.T. by M.T. v. Independent Sch. Dist. No. 16*, 894 F.2d 1176, 1188 (10th Cir.), *cert. denied*, 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990); *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir.), *cert. denied*, 522 U.S. 824, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997)).

In *D.T. by M.T. v. Independent Sch. Dist. No. 16*, 894 F.2d 1176, 1188 (10th Cir.1990), three students alleged that their teacher and basketball coach sexually assaulted them on a trip intended to raise money for a private summer basketball camp. *Id.* at 1178. The students argued that the teacher's actions were attributable to the state because of the "cloak of authority" held by a teacher. *Id.* at 1188. The Tenth Circuit Court of Appeals agreed with the students insofar as a teacher's authority is "not limited to the classroom or to the school year, but rather, in the case of a coach, extend to extra curricular activities." *Id.* (citing Br. of Appellee, No. 88–1619). However, the Tenth Circuit Court of Appeals disagreed with the students' characterization of the extra curricular activity—the basketball camp fundraising trip—because the fundraising activities were not related to school activities on account of the private nature of the camp the monies were intended for. Therefore, no nexus existed between the duties owing by the defendant to the school district and the fundraising activities. *Id.*

Likewise, in *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir.1997), a student alleged that his former music teacher sexually assaulted him. However, at the time the sexual assaults took place, the plaintiff no longer attended the elementary school where the defendant taught, but thereafter, and with the permission of his mother, continued his friendship with the defendant. *Id.* at 1043. The friendship between the plaintiff and defendant was characterized by home music lessons, trips to the zoo and theme parks, and church activities, during which the plaintiff contends the defendant sexually assaulted him. *Id.* The plaintiff argued that because the defendant had "first befriended and shown a special interest in" the plaintiff while serving as a teacher—winning the plaintiff's trust and affection—a nexus existed between the teacher's duties and the sexual assault. The Sixth Circuit Court of Appeals disagreed and found that the defendant was not acting under color of state law because his contacts with the plaintiff "were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official." *Id.* at 1047.

Similarly, in the present case, Schultzen asserts that Bumsted's report to Wisniewski regarding her smoking was based on his observations while acting as a police officer and made "under the guise of his role as a police officer." Pl.'s Resistance, at 4. Courts recognize:

> not every action undertaken by a person who happens to be employed by the state is thereby "under color of state law." *See, e.g., Mark v. Borough of Hatboro*, 51 F.3d 1137, 1150 (3rd Cir.) (explaining that an otherwise private tort is not committed under color of state law simply because the tortfeasor

is an employee of the state), *cert. denied,* 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995); *Kern,* 93 F.3d at 43 ("[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law"). Indeed, "the construct—'acting under color of state law'—rarely depends on any single, easily determinable fact," such as employment status, but requires an examination of all the relevant circumstances. *Martinez,* 54 F.3d at 986.

*Jones v. Clinton,* 974 F.Supp. 712, 721 (E.D.Ark.1997).

Thus, while Bumsted's city employee status is relevant in determining whether his conduct was under color of state law, no section 1983 liability may lie "if the challenged conduct is not related in some meaningful way either to the defendant's governmental status or to the performance of his or her duties." *Id.* (citing *Martinez v. Colon,* 54 F.3d 980, 986–87 (1st Cir. 1995)) (citations omitted). The question for this court, then, is whether Schultzen has generated genuine issues of material fact that Bumsted's alleged conduct can be said to have been related in some meaningful way to Bumsted's status as a City of Moville part-time police officer, a school district part-time bus driver, or to the performance of his duties.

Bumsted argues that, unlike the defendant police officer in *Roe,* he was not responsible for the security of the school district, nor did he provide the school with other services in his official capacity as a police officer. Schultzen contends that because Bumsted was a part-time bus driver for the school district, he was knowledgeable of the alleged preferential treatment of males over females. Pl.'s Aff., at 1. Schultzen does not argue that the school district failed to train Bumsted in his capacity as a bus driver or that he participated in the discriminatory activity itself by

virtue of his position as a bus drive. In addition, any attempt by Schultzen to assert a theory of liability against Bumsted on the theory of *respondeat superior* based on his position as a bus driver would fail because, as the Eighth Circuit Court of Appeals stated in *Crawford,* 109 F.3d at 1284, "it is well settled that § 1983 does not impose *respondeat superior* liability, *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and we have recently held the same for Title IX. *See Kinman v. Omaha Pub. Sch. Dist.,* 94 F.3d 463, 468–69 (8th Cir. 1996)." Moreover, despite the duties owed by the defendant in *Roe* to the school district in that case, the Eighth Circuit Court of Appeals found that the defendant's status as a police officer did not convert his alleged sexual assaults "for his own personal pursuits, not for any purpose legitimately or purportedly related to the exercise of his responsibilities as a police officer," into matters fairly attributable to the state and thus, his conduct was not actionable under section 1983. *Roe,* 128 F.3d at 1213. In the instant case, even if Bumsted made the report to Wisniewski in uniform, as Schultzen alleges, Schultzen fails to generate genuine issues of material fact that Bumsted made his report as part of his official duties or obligations owed to the City of Moville or the school district. As the court recognized previously, Bumsted had no statutory duty to report Schultzen's conduct to local authorities, let alone the school district's administration.

Furthermore, Schultzen's other argument, that Bumsted acted under the "guise of his role as a police officer," is akin to the plaintiff's argument in *D.T. by M.T. v. Independent Sch. Dist. No. 16*—that the defendant's actions were attributable to the state because of the "cloak of authority" held by a teacher. Pl.'s Resistance, at 4. Although the court in *D.T. by M.T.,* 894 F.2d at 1188, appeared willing to extend

the "cloak of authority" concept to a teacher facilitating extra curricular activities, the court stopped short of permitting the defendant to be cloaked with such authority when the alleged conduct was perpetrated by the defendant in the course of a fundraiser for a private basketball camp having no relationship to the school district or the defendant's duties and obligations owed by him to the school. In the instant case, Schultzen does not allege genuine issues of material fact that would allow a jury to find a relationship existed between Bumsted and the school district because Bumsted's position as a police officer was not in any way dependent upon the school district, or effected by the school district's policies and procedures. Thus, Bumsted's report to Wisniewski was in no way facilitated by the school district, nor were his actions "school-sponsored." *See Becerra*, 105 F.3d at 1047.

Although Bumsted, as a police officer, may have been a legal authority figure for persons in the community, which earned him enhanced credibility, the knowledge of Bumsted's status alone by Wisniewski is not sufficient to convert the actions Bumsted took in the pursuit of his private interests into action taken under color of law. In order to convert Bumsted's act of reporting Schultzen's smoking to Wisniewski into state action on the theory that he was acting under the guise of a police officer, a jury would have to find that Bumsted was purporting to exercise the power given him by the state. Bumsted could not wield statutory authority that he did not possess concerning the suspension of Schultzen, and both parties acknowledge as much when the parties agreed that Schultzen was of legal age to smoke. Based on the parties' assessment of the situation, it appears Schultzen is left to rely, as did the plaintiff in *Roe*, 128 F.3d at 1217, merely on Bumsted's status as a part-time police officer. As stated previously, the Eighth Circuit Court of Appeals

in *Roe* rejected the plaintiff's contention that mere knowledge of the defendant's status alone was sufficient to convert the action of the defendant into action taken under color of state law. *Id.*

Therefore, Schultzen fails to generate genuine issues of material fact indicating Bumsted's actions were made through power " 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law,' " rather than within the ambit of his personal pursuits. *Roe*, 128 F.3d at 1215 (quoting *West*, 487 U.S. at 48, 108 S.Ct. 2250) (quoting *Classic*, 313 U.S. at 326, 61 S.Ct. 1031).

### b. *Causation*

█ Notwithstanding the court's determination that Schultzen failed to establish the first element of her *prima facie* case under section 1983, the court proceeds to the second element of Schultzen's *prima facie* case. The Eighth Circuit Court of Appeals has stated that, " 'Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.' " *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Cotton v. Hutto*, 577 F.2d 453, 455 (8th Cir.1978) (per curiam) (respondeat superior theory does not apply in § 1983 suits)); *see Stagemeyer v. County of Dawson*, 192 F.Supp.2d 998, 1006 (D.Neb.2002) (quoting *Madewell*, 909 F.2d at 1208).

Bumsted argues that he did not deprive Schultzen of any rights because he merely reported what he observed—Schultzen smoking a cigarette—to school officials, and nothing more. Bumsted contends that he did not have input into whether Wisniewski and the school district would act upon his report. Furthermore, if Wisniewski or the school district did act based

upon Bumsted's report, Bumsted contends that he had no input in, nor did he take part in, the school district's application of its policies to Schultzen, which Schultzen does not dispute. In other words, according to Bumsted, Schultzen's allegations that the school district discriminated against female students in the application of its policies concerning student violations of the Good Conduct Policy are allegations regarding conduct that was beyond his control.[3]

Thus, Schultzen is unable to generate genuine issues of material fact that would allow a jury to find a relationship between the nature and circumstances of Bumsted's conduct and the performance of his statutory duties. *Roe,* 128 F.3d at 1215. In the absence of such a causal connection, the officer cannot be responsible for the deprivation of rights to the plaintiff. *Id.* The court finds that Schultzen fails to generate genuine issues of material fact regarding the second prong of her *prima facie* case under section 1983. *Roe,* 128 F.3d at 1215.

For these reasons, the court will grant that part of Bumsted's motion for summary judgment asserting that Schultzen has failed to establish her *prima facie* case under section 1983 for alleged violations of her right to privacy, denial of equal protection, and due process by Bumsted in his official capacity.

### D. Qualified Immunity

■ Alternatively, and as his final ground for summary judgment on Schultzen's section 1983 claims, Bumsted argues that he is shielded from section 1983 liability because he is entitled to qualified immunity.

#### 1. Arguments of the parties

Schultzen argues that Bumsted is not entitled to qualified immunity because she "had a clear right not to be discriminated against on the basis of her sex under Title IX." Pl.'s Resistance, at 5. Schultzen argues that a rational jury could find that Bumsted's sole reason for reporting her conduct to Wisniewski was because she is female, and that the decision to punish her, but not males, violated her constitutional right to equal protection of the law and was a pretext for unlawful sex discrimination. Bumsted asserts that he is entitled to qualified immunity because "reporting what he believed to be a violation of the good conduct policy was objectively reasonable, and certainly not inconsistent with any clearly established law." Def.'s Br., at 10–11. Bumsted contends that even if the court should find that Schultzen generated genuine issues of material fact concerning whether Bumsted knew that the school district treated females more harshly than males, such a determination would not prevent a finding of qualified immunity for Bumsted because merely reporting Schult-

**3.** Schultzen argues that Bumsted caused Schultzen's injuries because "Bumsted clearly aided and abetted the School District's violation of Title IX," citing the Eighth Circuit Court of Appeals's Model Criminal Jury Instruction 5.01. Pl.'s Resistance, at 5. The court does not find that Schultzen has sufficiently stated a claim for aiding and abetting under section 1983. *Cf. Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir.1985) (finding an allegation that a public defender conspired with judges to deprive an inmate of federally protected rights may state a claim under sec-

tion 1983, "However, allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.' " (citing *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir.1983))). Bumsted's mere conveyance of his observation of Schultzen smoking at the gas station did not amount to aiding and abetting the school district because, as determined previously, Bumsted had no input in, nor did he take part in, the school district's application of its policies to Schultzen.

zen's smoking to the school district's administration would not support a claim under section 1983 because witnesses are immune from suit; and Bumsted had no input into, or control over, the school district's administration of its good conduct policy. Furthermore, Bumsted claims that Schultzen's argument is flawed because in alleging that Bumsted reported her in order that she would be suspended, Schultzen focuses on Bumsted's subjective intent rather than the objective legal reasonableness of his conduct.

### 2. *Applicable standards*

"Qualified immunity shields governmental officials from personal liability if their actions, even if unlawful, were 'nevertheless objectively reasonable in light of the clearly established law at the time of the events in question.'" *Turpin v. County of Rock,* 262 F.3d 779, 783 (8th Cir.2001) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus, "[q]ualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer,* 262 F.3d 847, 849 (8th Cir.2001) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Wilson v. Lawrence County,* 260 F.3d 946, 951 (8th Cir.2001) (also quoting *Harlow*). "In other words, officials are protected by qualified immunity so long as 'their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Wilson,* 260 F.3d at 951 (quoting *Anderson,* 483 U.S. at 638, 107 S.Ct. 3034).

"In determining if [defendants] are entitled to qualified immunity [courts] must ask whether [the plaintiffs] stat[e] a violation of a constitutional right, and whether that right was clearly established at the time, such that a reasonable officer would

have known that his conduct violated the law." *Wilson,* 260 F.3d at 951 (citing *Tlamka v. Serrell,* 244 F.3d 628, 632 (8th Cir.2001)); *see also Turpin,* 262 F.3d at 783 ("The inquiry in determining whether the officers are entitled to qualified immunity focuses on whether the [plaintiffs] have asserted a violation of a clearly-established constitutional right and, if so, whether there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right."); *Hunter v. Namanny,* 219 F.3d 825, 829 (8th Cir. 2000) (describing the test as a "three-part inquiry" under which the court asks "(1) whether [the plaintiff] has asserted a violation of a constitutional or statutory right; (2) if so, whether that right was clearly established at the time of the violation; and (3) whether, viewing the facts in the light most favorable to [the plaintiff], there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated that right").

The Eighth Circuit Court of Appeals has held further that:

> To be "clearly established," the right's contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Hope v. Pelzer,* 536 U.S. 730, 738–39, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). There is no requirement, however, "that the very action in question has previously been held unlawful, but rather, in the light of preexisting law the unlawfulness must be apparent." *Vaughn,* 253 F.3d at 1129 (internal quotations and citations omitted); *see also Hope,* 536 U.S. at 738–39, 122 S.Ct. at 2515; *id.* at 2522 (Thomas, J., dissenting).

*Turner v. Arkansas Ins. Dept.,* 297 F.3d 751, 755 (8th Cir.2002). In addition, "The law is clearly established if the law was sufficiently developed to give the official 'fair warning' that his alleged conduct violated the plaintiff's rights." *Shade v. City of Farmington, Minnesota,* 309 F.3d 1054, 1059 (8th Cir.2002) (citing *Hope v. Pelzer,* 536 U.S. 730, 738–39, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002)).

### 3. The test for qualified immunity on summary judgment

Although the court identified above the usual analysis of a proffered defense of qualified immunity to liability for a constitutional violation, the court must determine the proper test for qualified immunity in the context of a motion for summary judgment. The test for qualified immunity at the summary judgment stage of a proceeding is an objective one: The plaintiff must demonstrate that the law is clearly established and the defendant then bears the burden of showing that his conduct either does not violate plaintiff's rights or that there were extraordinary circumstances and that the defendant neither knew nor should have known of the relevant legal standard. *Johnson–El v. Schoemehl,* 878 F.2d 1043, 1048 (8th Cir.1989). If the plaintiff can show that the defendant's conduct violated clearly established law, "then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Cross v. City of Des Moines,* 965 F.2d 629, 632 (8th Cir. 1992) (quoting *Salmon v. Schwarz,* 948

F.2d 1131, 1136 (10th Cir.1991)); *Johnson–El,* 878 F.2d at 1048 ("The defendant bears the burden of proof with respect to all other elements of the defense").

### 4. Application of the standards

Bumsted argues that the plaintiff cannot show that the law is clearly established with regard to Bumsted's conduct of communicating to Wisniewski his observation of Schultzen smoking. In other words, Bumsted claims that his conduct did " 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Busch v. City of Anthon,* 173 F.Supp.2d 876, 900 (N.D.Iowa 2001) (citing *Carroll v. Pfeffer,* 262 F.3d 847, 849 (8th Cir.2001)) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). Schultzen does not attempt to generate genuine issues of material fact that the law concerning Bumsted's conduct was clearly established, nor does Schultzen address Bumsted's contention—that the law is not clearly established—in her resistance to Bumsted's motion for summary judgment. Because Schultzen fails to generate genuine issues of material fact that demonstrate the law is clearly established, the court finds that the law regarding Bumsted's conduct of reporting Schultzen to Wisniewski is not clearly established and Bumsted need not prove that his actions were objectively reasonable in light of the law and the information he possessed at the time of his actions.[4]

### III. CONCLUSION

Schultzen concedes, and the court concludes, that no direct cause of action can lie against Bumsted under IOWA CODE

---

4. Schultzen also alleges in her complaint that Bumsted violated her rights to equal protection, privacy and due process guaranteed by the United States Constitution. Although a factual basis for these claims may exist, Schultzen waived these constitutional claims when she failed to brief them in her resistance to Bumsted's motion for summary judgment, but even so, because the law is not clearly established, Bumsted is entitled to qualified immunity.

ch. 216. Schultzen also concedes, and the court concludes, that only grant recipients (i.e., schools) can be held liable under Title IX, and by definition grant recipients exclude individuals, thus no direct cause of action lies against Bumsted under Title IX. In addition, the court concludes that Schultzen's claim against Bumsted in his individual capacity under section 1983 based on a violation of Title IX must fail. Next, the court determines that Schultzen did not establish her *prima facie* case under section 1983 for alleged violations of her right to privacy, denial of equal protection, and due process by Bumsted in his official capacity. Finally, the court finds that Bumsted is entitled to qualified immunity for all of Schultzen's claims alleging violations of the Equal Protection Clause, Due Process Clause, and the right to privacy. For these reasons, the court **grants defendant Bumsted's motion for summary judgment on all counts. This case against defendant Bumsted in his official and individual capacities is dismissed in its entirety.**

**IT IS SO ORDERED.**